**DICKERSON et al. v. STATE.**
No. 9291.

Court of·Civil Appeals of Texas.   Austin.
March 24, 1943.

Rehearing Denied March 31, 1943.

Will C. Perry, Jr. and J. A. Rauhut, both of Austin, for appellants.

Gerald C. Mann, Atty. Gen., and Wm. J. R. King, Ocie Speer, and Geo. W. Barcus, Asst. Attys. Gen., for appellee.

McCLENDON, Chief Justice.

Suit against the State, brought under authority of House Concurrent Resolution No. 56, 45th Legislature, Gen.Laws, Reg.Ses. 45th Leg., 1937, p. 1599, the pertinent portions of which read:

"Whereas, Walter P. Dickerson, who enlisted in Machine Gun Troop, 3rd Texas Cavalry, June 17, 1918, while in such service and while called for duty during the storm and flood at Rockport, Texas, and during an emergency prior to October 5, 1920, suffered severe internal injuries while obeying the orders of his superior officers in line of duty; and

"Whereas, The said Walter P. Dickerson, by reason of said injuries and since said date has been permanently disabled, and his said commanding officers were aware of his physical condition and should have known that serious permanent injury would result from the duties assigned the said Walter P. Dickerson but, in spite thereof, ordered that the same be performed and by said orders and negligence caused said injuries; now, therefore, be it

"Resolved by the House of Representatives, the Senate concurring, That the said Walter P. Dickerson be given the permission and consent of the State of Texas, to file and prosecute suit or suits against the State of Texas and the Adjutant General's Department thereof."

W. P. D. (Walter P. Dickerson) being insane and having no legal guardian, the suit was brought in his behalf by his father, H. D. D. (H. D. Dickerson), as next friend. The State leveled a number of demurrers and exceptions to the petition, all of which were overruled. Thereafter W. P. D. died, and H. D. D. and Mrs. Sam Douglas and husband filed a suggestion of death and asked leave to prosecute the suit. The application showed that W. P. D. died intestate, was not married, and left no estate, except the claim in suit, no administration was had and none was necessary upon his estate, and that Mrs. Douglas was his daughter and sole heir at law. The State filed a plea to the jurisdiction, urging that the permission to sue it was personal to W. P. D. and did not extend to his heirs; and a plea in abatement urging that the cause of action sued upon was not one which survived upon the death of W. P. D. Hearing was had upon these pleadings and the facts alleged in the suggestion of death were proved conclusively. The court sustained both pleas and dismissed the suit. H. D. D. and the Douglases have appealed.

The State has filed a motion to dismiss the appeal on two grounds:

1. As to H. D. D. because no cause of action was asserted in his own behalf, and his authority as next friend terminated upon the death of W. P. D. He had no interest (unless as a creditor) in the estate of his son, Mrs. Douglas, under the facts shown, being his sole heir at law. Art. 2570, subd. 1 R.C.S., and Vernon's Ann.Civ.St.

2. As to Mrs. Douglas and husband (the latter joining only pro forma) because they were not parties to the record or the judgment since the court declined to permit them to become parties or to prosecute the suit. This contention is wholly without merit. One who seeks to intervene or otherwise to become a party to a suit, thereby becomes a party to the extent, in any event, of determining his right to become such party. If he is denied the asserted right, he has the same right of appeal as any other litigant. If this were not true, the judgment of the trial court denying the right to intervene, or to continue the litigation as heir or legal representative of a deceased plaintiff, would be final no matter how meritorious the claim of right to become a party to the suit. The mere statement of such proposition suffices to its refutation. This conclusion is so elementary that it needs no citation of authority. The law books are replete with cases in which appellate courts have enforced the denied rights of intervenors and heirs to become parties and prosecute suits instituted by others. In so far as concerns heirs of a deceased plaintiff Rules 150 and 151, T.R.C.P., which supplant to that extent Arts. 2078 and 2079, R.C.S. and V.A.C.S., provide procedure by

which they may become parties. Of course, their right in such case is dependent upon survival of the asserted cause of action. But that issue is one which affects the merits of their asserted rights and not their status as parties to the record and judgment or their right to appeal from an adverse judgment of the trial court.

■ While H. D. D. is listed as a party appellant, he does not appear to assert any personal interest in the litigation. In the judgment it was stipulated that he was the "duly authorized attorney in fact for Mrs. Sam Douglas," under power of attorney, "with full authority to prosecute this suit in her behalf." The suit was sought to be prosecuted in her name, and her pleadings are signed by a duly licensed and practicing attorney; and no question is raised as to authority on the part of either to represent her. See Rules 7, 12 and 45(d), T.R.C.P. The joining of H. D. D. as a party appellant affected no right of appellee, and if improper may be disregarded as surplusage. The motion is overruled.

. The questions which the appeal presents (arranged somewhat differently than in the briefs) are embodied in the following contentions (substantially stated) of the State:

1. The cause of action asserted was one sounding in tort, for which the State was not liable.

2. The cause of action asserted was one which did not survive the death of W. P. D.

3. Rules 150 and 151, T.R.C.P. have no application to actions against the State.

4. The enabling resolution was personal to W. P. D. and did not inure to his heirs.

Upon the first contention: Art. 5845, R. C.S. and V.A.C.S., which was originally passed in 1905, reads: "Every member of the military forces of this State who shall be wounded or disabled while in the service of this State, in case of riot, tumult, breach of the peace, resistance to process, invasion, insurrection or imminent danger thereof, or whenever called upon in aid of the civil authorities, shall be taken care of and provided for at the expense of this State." .

■ This article, we hold, creates a liability on the part of the State in favor of all who thereafter enlist in the military service of the State and who are wounded or become disabled while in that service

to "be taken care of and provided for at the expense of this State." A proper classification of such liability—whether it be contractual, quasi-contractual or otherwise —is considered below. The liability is one voluntarily assumed by the State, and inures to the benefit of all enlisted in the State's military service who are wounded or become injured in such service. The liability is restricted to being "taken care of and provided for." This, we think, includes, and includes only, such reasonably appropriate means and facilities as fall within the commonly accepted meaning of the expressions, "to take care of and provide for," in this context, that is, as related to one wounded or disabled in the military service, such as food, clothing, housing, medicines, medical care, nursing, hospitalization, and the like, during the disability. It does not include, we think, loss of time, decreased capacity or total incapacity to earn money, physical or mental pain or other damage resulting from the disability. The two expressions, if not entirely synonymous, are complementary; the one, the "taking care of," importing the actual doing of the requisite things, and the other, the "providing for," importing supplying the means or facilities for their doing. Where the State has itself provided such care or has borne the expense thereof, the liability is discharged. Where the State has not so provided or borne such expense, its liability extends to reimbursement for such reasonable sums as have been expended to that end by the injured militiaman or for which he has become legally liable. The allegations of the petition are sufficient to support recovery upon this theory.

■ But, the State urges, the enabling resolution does not include such theory, but only authorizes suit for tort liability. We think the resolution clearly includes any liability of the State arising out of disability incurred while in its military service upon the occasion specified in the resolution, whether such disability arose from negligence or otherwise. The resolution, in this respect, is quite similar to that in State. v. Hale, Tex.Civ.App., 96 S.W.2d 135 (expressly affirmed on this point in 136 Tex. 29, 146 S.W.2d 731).

■ In so far as the petition seeks recovery predicated upon a tort liability (that of negligence of State officials) we think clearly it asserts no legal liability of the State. This question has been fre-

quently before the courts of this State, and it has been uniformly held that in the performance of its governmental functions, the State is not liable for the tortious acts of its officers, agents or employees. In Brooks v. State, Tex.Civ.App., 68 S.W.2d 534, 535, (error ref.), it was held that the State was not liable to an employee of the State Highway Department who was injured while in the course of his employment in the construction by the Department of a State owned public highway, the asserted injury resulting from negligence of the Department. Supporting authorities were cited. It was there pointed out that the liability upheld in State v. Elliott, Tex. Civ.App., 212 S.W. 695, (error ref.) was "for damages growing out of the operation by the state of a railroad. This recovery was based clearly, we think, upon the principle that the operation of such enterprise was not a governmental function, but industrial or proprietary in character; and the holding in that case is not in derogation of the well-established rules relating to strictly governmental functions such as the one here involved." That case has been followed in a number of subsequent cases. In Gotcher v. State, Tex.Civ.App., 106 S.W.2d 1104, 1105, various constitutional provisions (the same as those now urged by appellants) were asserted in support of the liability. These grounds of liability were denied, the opinion asserting: "The doctrine of respondeat superior does not apply to the state or to its agencies engaged in performing governmental functions. The authorities are uniform upon this subject. 59 C.J., p. 194, § 337; 25 R. C.L., p. 407, § 43." This doctrine extends to municipal and other corporations created by the State in the performance of delegated purely governmental functions. See Kling v. Austin, Tex.Civ.App., 62 S.W.2d 689.

Appellants cite the case of State v. Dickey, Tex.Civ.App., 158 S.W.2d 844, 845 (error ref. WM.) That was a suit by the State for damages for alleged negligence "in the breaking down" of a highway steel bridge due to violation of the truck load limit law. Contributory negligence in the construction of the bridge was asserted as one of the defenses. Judgment against the State was reversed upon a number of grounds, some of which related to the defense of contributory negligence. Regarding that issue the court said: "In this case the State voluntarily made itself a party litigant and sought relief through the courts. It thereby subjected itself to all of the rules of procedure applicable to individuals similarly situated. State v. Elliott," supra.

Whatever may be the effect of the holding in that case, and of the refusal for want of merit of the application for writ of error, it certainly does not have the effect of overruling the long established principle asserted in the Brooks and other cases. A discussion of the grounds upon which that case may be distinguished from the case at bar would serve no useful purpose here. It suffices to say that our above holding on this point is in accord with the long established law of this State.

Nor do we think it necessary to review the various decisions of other jurisdictions cited by appellants. The principle which we have above applied is that there is a total and absolute absence of liability on the part of the State for the tortious acts of its officers, agencies and employees; and not merely a "defense of sovereign immunity from liability," which the State may waive.

As to point 2: In so far as the liability asserted was ex delicto, it is unnecessary to consider whether the provisions of Art. 5525, R.C.S. and V.A.C.S., as amended in 1927 (Chap. 239, § 1, p. 356, Acts 40th Leg.), are applicable to actions against the State, since, as we have held, no liability existed against the State in that regard.

In so far as the asserted cause of action was predicated upon Art. 5845, we think the liability of the State was contractual in nature. The statute creates an obligation on the part of the State to those thereafter entering the military service. The latter, by the voluntary act of entering that service bring themselves within its purview and become the objects of its enactment, thus establishing the reciprocal relations of promisor and promisee—obligor and obligee. Failure on the part of the State to "care or provide for" the wounded or disabled militiaman or to furnish the means to that end would create a liability as for debt. Independently of statute, the general rule is that actions ex contractu survive. Exceptions to this rule are limited to damages for breach of contract which are purely personal in nature, such as "pain of body, anguish of mind, injury to character, deprivation of liberty," and the like. 1 Am.Jur. pp. 70, 71, § 83. See, also, Williams v. Harris, Tex.Civ.App., 193 S.W. 403 (error ref.); Dowlin v. Boyd,

1010

Tex.Civ.App., 284 S.W. 636; Id., Tex. Com.App., 291 S.W. 1095; 1 Tex.Jur., p. 26, § 8; 1 C.J.S., Abatement and Revival, pp. 184–186, § 137a.

We overrule point 3. When the State enters or, with its consent, is brought into court as a party litigant, its rights are adjudicated in accordance with the same general legal principles, the same rules of evidence and the same rules of procedure, as are those of the private litigant, except in so far as modified or otherwise affected by statute. This general principle is well established. See 38 Tex.Jur., p. 860, 861, § 39, and notes 13 and 18, 19 and 20; Id. pp. 864, 865, § 43. No tenable reason is suggested why a suit against the State should not be governed by Rules 150 and 151, T.R.C.P.

We also hold that the enabling resolution inured, upon W. P. D.'s death to his heirs (point 4, above), to the extent that the cause of action embraced within the resolution survived his death. It is true that as a general rule the authority granted by the State to sue it is strictly construed. In applying this rule in the cited case of United States Cas. Co. v. State Highway Dept., 155 S.C. 77, 151 S.E. 887, 890, it was held, inter alia, in a majority opinion that a statute authorizing "any person, firm or corporation who may suffer injury to his or her person or damage to his, her or its property" did not inure to an assignee. One of the justices, however, while concurring in the result on other grounds, dissented from this holding. He said:

"But it is insisted that, because the act does not give the assignee of a claim by the owner against the department the right to sue, under the rule of strict construction, he does not come within its protection. I think that this is an exceedingly narrow and unjustified contraction of the purpose of the act, which evidently was that the department should be held responsible for the consequences of its delicts. But, aside from this, when the state invests one of its citizens with a fixed right and a fixed remedy, it follows necessarily that it intended to invest him with every incident of those rights, one of which is the right to assign them."

No case upon the exact point at issue is cited by either party, and our investigation has failed to disclose any. We think the permission of heirs to continue the suit instituted by W. P. D. under the procedure applicable generally is implicit in the permission to sue granted to W. P. D. Under Rule 150 (former Art. 2078, R.C.S.) the suit did not abate by reason of W. P. D.'s death. By following the prescribed procedure, heirs do not institute a suit, they are merely substituted as parties plaintiff to a pending suit, and the action proceeds as one "pending from the date of its original institution." 1 Tex.Jur., p. 74, § 51. The permission to sue implies that such suit be governed by the applicable rules of civil procedure which embrace the above Rules 150 and 151. The authorities cited under point 3, above, clearly, we think, support this holding.

The trial court's judgment is reversed and the cause remanded.

Reversed and remanded.