**GUARDIAN ABSTRACT AND TITLE COMPANY et al., Appellants,**

v.

**SAN ANTONIO BAR ASSOCIATION et al., Appellees.**

No. 10310.

Court of Civil Appeals of Texas.

Austin.

April 20, 1955.

Rehearing Denied May 11, 1955.

L. M. Bickett, San Antonio, for appellants.

Earl P. Hall, Austin, Frank M. Rosson, San Antonio, Rawlings, Sayers, Scurlock & Eidson, Ft. Worth, for appellees.

ARCHER, Chief Justice.

This suit was brought by San Antonio Bar Association and others, as plaintiffs, against Guardian Abstract and Title Company, a corporation, and John McQuown and Mary McQuown, individually, as defendants, to restrain the corporate defendant from the alleged unauthorized practice of law and the individual defendants from the alleged unethical practice of law. The case was tried before the Court on the fourth petition filed by plaintiffs, being plaintiffs' third amended original petition. The answer of the defendants denied that the corporate defendant had ever engaged in the practice of law or had any intention of so doing, and further, denied that the individual defendants had been guilty of any unethical conduct in the practice of law.

The judgment of the Court decreed that the corporate defendant, "its agents, servants, employees, stockholders, successors and assigns, shall be forever enjoined, prohibited, and restrained from preparing in connection with real estate transactions in which the said defendant title company issues or is obligated to issue its policies of title or mortgage insurance, any legal instruments for execution by persons not employed in its business and to which said defendant title company is not a party, and in which the defendant title company neither has or acquires any interest in the subject matter of said instruments, other than the writing and issuing of said policies of title or mortgage insurance."

The judgment, also provides: "In connection with this permanent injunction, all relief prayed for by any party, but not herein specifically granted, is in all things denied."

The appeal is based on eleven points assigned as error in the trial.

Points Nos. 1, 2, 3, 4, 5, and 6 are directed to the error of the court in overruling appellants' first, second, third, fourth, fifth, sixth, seventh and eighth special exceptions respectively.

The seventh point is that the court erred in finding that the Title Company is engaged in unauthorized practice of law and in enjoining it from doing so.

The eighth point is aimed at the action of the court in declaring that appellants, John McQuown and Mary McQuown, individually as lawyers, violated Canon No. 43 of the Canons of Ethics of the State Bar of Texas, art. 13, § 3, Vernon's Ann.Civ.St. following article 320a–1, in permitting their names and professional services to be used in aid of the unlawful practice of law by the Title Company.

The ninth point is that the court erred in granting the injunction restraining the Title Company, its employees, agents and stockholders from preparing legal instruments for others than the Title Company, if applicable to the McQuowns, because under the rules of the State Bar of Texas there is an adequate remedy at law.

The tenth point is that the judgment granting the injunction should be construed as not having the effect of restraining the McQuowns from preparing such legal instruments as are mentioned in the judgment, because the petition of appellees was that the McQuowns be prohibited from preparing instruments for others than the Title Company, etc. but the restraining order does not refer to the McQuowns, in any capacity, and because the judgment denied any relief not specifically prayed for.

The eleventh point is as follows:

"The judgment of the Court, permanently enjoining and restraining the Guardian Abstract and Title Company, its agents, servants, employees, stockholders, successors and assigns, if applicable to John and Mary McQuown, is erroneous, because it is so broad and comprehensive in scope as to prevent them from performing services and acts which they are lawfully entitled to perform as duly licensed lawyers engaged in the general practice of law, in that it would prohibit and prevent the McQuowns from preparing legal instruments, (1) where the McQuown Mortgage Company makes loans on real property and transfers

same; (2) where the seller, buyer, and lender request them to prepare such instruments, and pay fees directly to them; (3) where their regular clients request them to prepare such instruments; (4) where relatives or friends, with or without the payment of fees, request them to prepare such instruments; and (5) where they individually sell or buy real property, or make loans thereon."

We are favored with excellent briefs for appellants and appellees as well as have been furnished with a number of well prepared amicus curiae briefs and appellees reply to such.

The Guardian Abstract and Title Company is a private corporation, organized under the laws of the State, and is conducting its business under the authority of Chapter 9, Article 9.01 to 9.27 inclusive, Insurance Code of the State, V.A.T.S.

The State Board of Insurance Commissioners prescribes forms, rules and regulations under which the company operates.

Appellants McQuown and McQuown are licensed lawyers, members of the State Bar, and engaged in the practice of law. The lawyers have offices adjacent to, but separate from, the offices of the Title Company.

These attorneys employ and pay the salary of four stenographers, one of whom is in the law offices and the other three are in the Title Company's offices, all of whom are the only persons engaged in typing the legal instruments referred to in the judgment, the forms of which had been prepared by the attorneys previously. All fees charged for the preparation of such instruments were paid to the attorneys monthly.

■ We do not believe the court was in error in overruling appellants' special exceptions Nos. 1, 2, 3, 4, 5, 6, and 7 and think the record shows that the Title Company is engaged in the unauthorized practice of law and that the pleadings are sufficient to raise the issue.

The company is engaged in the title insurance business, it does not insure the titles itself, but acts as an issuing agent for a title insuring company.

The majority of the stock of the Guardian Abstract and Title Company is owned by McQuown Mortgage Company, the stock of which is owned by McQuown & McQuown who are two of its Board of three directors and vote the stock at stockholders' meetings of Guardian. Mary McQuown is Vice President of Guardian and both she and Mr. McQuown are members of its Board of Directors which consists of three.

John and Mary McQuown, both attorneys, are general counsel for Guardian, and represent it generally and are paid a monthly retainer of $200 per month and in addition are paid a $5,000 cash fee each year. The McQuowns as stockholders received dividends.

Many, if not most, of the legal instruments essential to complete the real estate transactions handled by Guardian Title Company, i. e. warranty deeds, notes and deeds of trust, are prepared by secretaries for which attorney's fees are charged and collected by the Title Company for the McQuowns as attorney's fees and remitted to them whether in attendance or not.

Law offices are maintained by the McQuowns adjacent to the Title Company but separated by a partition. Among their employees are four secretaries or conveyancers, three of whom have space and desks in the offices of the Title Company and one in the law offices.

The system of operation of the Title Company in its normal transactions is handled from its inception to conclusion by the Title Company and may be described as follows:

"Q. Would you tell us, please, just what is the usual routine or system of operation for handling a deal that comes into the title company from the time it gets here until it leaves? A. Well, I believe usually the real estate agent brings in the earnest money contract. It is given to the receptionist

who writes what is known as a pink slip. Then it is entered in the order book. It is placed in a folder and given to the abstractor. And from there, he checks the records and then it comes back to the receptionist who puts it on a file card, and it is given to the closer. The closer checks it over, and it is given to the stenographer, and the stenographer writes the papers, and it is given back to the closer for closing. It goes back to the bookkeeper for billing out, to the file room to have the file numbers put on, and after that, it is recorded and then comes back to the stenographer for the final checking out."

The description of John McQuown is as follows:

"Q. If so, will you tell us what that system of operation is and in the normal transaction, how is it handled? A. When the order comes in, the—it's given to an abstracter, and the abstracter runs down all the instruments that affect that particular title, and then he turns it over to the examining attorney. The examining attorneys examine all the instruments and reads them all, that is, that affect that particular title, and then he makes what we call a run sheet, and it shows where the title is vested, and whether or not there was a lien against the property, and what curative matter he requires. Then that is given to the paper writer, and she then prepares the—it's ready—gets ready to prepare the papers. When she does, she looks at the earnest money contract, and if it's clear, she will follow the earnest money contract. If it is not clear, she will talk to the real estate people or buyer and seller, and get it exactly, exactly what the dope is, if there is going to be a loan placed on it, made by the Mortgage Investment Corporation, or some other loan company, or some loan company, or McQuown Mortgage Company, she gets the terms of that loan from them. That usually comes out in a bank commitment letter. Some of the mortgage companies just give you a commitment letter that is

very definite on the payment how the mortgage is paid and what have you."

Mary McQuown testified as follows:

"Q. Well, if you don't know exactly, tell us what your understanding is as to how the matters are handled and what the system of operation is. A. Well, I think that when the order comes in, it goes on their order book. I think the order is passed back to the abstracter, and from the abstracter to the examining attorney, and he prepares what is known as a run sheet, shows where the title is, in whose name, what liens are outstanding, and any curative matter that he might need, anything that he might want, if he wants an affidavit to clear it up, if he wants us to prepare affidavits, and what legal instruments he wants us to prepare. And from there is goes to our girls who prepare those legal instruments, and if there is anything unusual about it, why we prepare it so that everything is in order. Then I believe that file is passed to the closer, and I believe the closer makes the prorations, and somewhere along the line someone gets the tax certificates, if there are any outstanding taxes, I believe the closer sets up the disbursements, the monies that have to be paid out, and I believe they balance out their sheets to see that all monies are in, and pay off the old liens and things of that sort to clear the title company. Of course, they have the people come in and sign the instruments."

It is therefore to be noted that attorney's fees are charged the buyer, the seller and the lending agency for the legal instruments which the conveyancers prepare, and are collected at the time of closing and remitted monthly by the Title Company to the attorneys McQuown & McQuown in ninety per cent of the cases.

The President of the Title Company testified that in ordinary transactions where he is not told that the parties have an attorney, he refers the business to the McQuowns and the parties are charged for

attorney's fees, who ordinarily do not meet Mr. McQuown.

The stenographers on the pay roll of the McQuowns, who prepare the legal instruments, are also secretaries to the closers of the Title Company and write papers, check out finals and generally assist the closer who controls the details of the work of the conveyancers who do all of the typing and preparation of the owner's title policy and the mortgagee's title policy and file the papers for record. On occasions the conveyancers consult with the attorneys.

The conveyancers are employed by and discharged by the President of the Title Company and work at a rate of pay and hours as all title employees. The equipment used by the conveyancers are supplied by the Title Company. Such arrangement was stated to be good for the lawyers and the Title Company and that most buyers and sellers probably believe it facilitates their deals to just have the conveyancers prepare the papers because they were so familiar with that type of work.

It was testified by Mary McQuown that it would be possible for the conveyancers to work in the law office and for the Title Company to have its own secretaries to perform services solely for it, but that it is more expedient to use the present system for the lawyers and for the Title Company.

The pleadings are long and to embody them in this opinion would unduly lengthen it.

Paragraph 3 of plaintiff's third amended original petition alleges that the defendant Title Company's stockholders, directors and employees, naming the attorneys with the approval of the Title Company, have prepared, are preparing and unless restrained will in the future prepare for execution by persons not employed in its business, deeds, deeds of trust, mortgages, notes, mechanic's lien contracts, in which it has no interest and acquires none, nor to which it is a party, and naming other instruments, and that agents and representatives of the Title Company advise parties to such instruments as to their purpose and legal effect; and that

most of such instruments are in connection with transactions in the course of which the Title Company issues or obligates itself to issue policies of title or mortgage insurance.

In paragraph 4 of such amended petition allegations are made that the McQuowns are licensed attorneys and members of the State Bar of Texas and partners. That they own the majority of the stock of the Title Company, are members of the Board of Directors, and control the company; that Mary McQuown is Vice President; that the lawyers are general counsel for the company and receive attorney's fees for their services.

Further allegations are made that through the said attorneys the Title Company has engaged and is engaged and will continue to so engage unless enjoined, in the unlawful practice of law; that in most instances in which the Title Company issues a policy or acts as escrow agent in closing transactions, the McQuowns represent the Title Company, the seller, buyer, and when a loan is made, the lender. That legal instruments are prepared for each of the parties by the lawyer, fees charged, collected by the Title Company and remitted to the lawyers; that the seller and buyer are mere technical clients of the lawyers.

In paragraph 5 allegations are made that the lawyers receive compensation from the Title Company in the form of dividends, bonuses, salaries and attorney's fees, and that the work which the attorneys do in the preparation of legal instruments, and advice given is ordered by managerial officers of the Title Company and performed under the direction of such officers, and not under the control of the persons or clients for whom the work is done and all contacts by the customers are with the representatives of the Title Company and not with the said attorneys and the acts of said attorneys are the acts of the Title Corporation.

Allegations are made in the 6th paragraph of the petition that the Title Company, because of the manner of the operation of the company in advertising its business, is engaged in unethical practice of law with the named lawyers, and such is unau-

thorized practice of law by the Title Company in that the company directs the law business to the said lawyers; that the company prepares and distributes to the public "Earnest Money Receipts" on which is printed the name and address of the Title Company, and in the body of such instruments has the following statement: "Seller is to furnish a certificate of title guaranty issued by Guardian Abstract and Title Co.," and similar language is placed on the backs of the instruments to which it is not a party, and in which it has, or acquires any interest in the subject matter.

That the Title Company places on the back of legal instruments advertising matter reading: "McQuown & McQuown, attorneys for Guardian Abstract & Title Co." etc., which constitutes direct advertising for the attorneys.

In paragraphs 7 and 8 of the pleading allegations are made that the conduct as alleged in the foregoing paragraphs is a violation of the laws of Texas and unethical conduct as defined by the canons of ethics as promulgated by the Supreme Court of Texas; that the defendants contend that the procedure followed by them is not unlawful and unethical and plaintiffs sought a Declaratory Judgment.

Prayer was for an injunction restraining the defendants as follows:

(1) Prohibit any officer, director, employee, attorney or stockholder from preparing any legal instrument in any transaction in which the Title Company issues or is obligated to issue policies; restrain the McQuowns so long as they are attorneys for the Title Company, or as an employee, director or stockholder of the company, from preparing legal instruments for others than the company in connection with transactions in which the Title Company issues or is obligated to issue its policies. To restrain all of the named employees, directors, stockholders and the attorneys from giving advice, oral or written, to persons who are not employees of the Title Company, as to the purpose or effect of instruments to which such persons are parties, which have been prepared in connection with any transaction in the course of which the Title Company issues its policies and to prohibit any form of advertising, so long as the McQuowns are attorneys or stockholders, and while such attorneys prepare legal instruments for others than the corporation, in which the corporation neither has, nor acquires any interest, in connection with transactions in which the corporation issues its policies, further prohibition was made concerning the referring of persons to any lawyer or law firm, etc.

The defendants filed plea of misjoinder and made the exceptions which have been referred to and made general denials. The plea and exceptions were overruled.

Trial was had to the court and judgment rendered granting a permanent injunction.

The court found that the Title Company is a corporation authorized "to make, compile, and own abstracts of title, etc., and that it issues policies of owners' and mortgagees' title insurance as the agent of a foreign title insurance corporation, to persons buying real estate and lending money on real estate. Findings were that a majority of the stock of the Title Company is owned by the McQuown Mortgage Company, a private corporation, and that all of the stock of the Mortgage Company is owned by the McQuowns who constitute two of the three member Board and who vote the capital stock of the Title Company. That the Title Company has a Board of Directors consisting of three, two of whom are the McQuowns, one of whom is Vice President; that both John and Mary McQuown are duly licensed lawyers and represent the Title Company as general counsel and are paid an annual retainer fee and maintain law offices adjacent to the Title Company's offices; that the McQuowns receive the dividends on the stock of the Title Company standing in the name of the Mortgage Company. We have thus far given a recital of the court's findings.

Paragraphs 7, 8, 9 and 10 are as follows:

"7. As an established system of operation, and in the majority of the real

estate transactions in which the Guardian Abstract and Title Company issues a title guaranty policy or a mortgagee's guaranty policy, John McQuown and Mary McQuown prepare the legal instruments necessary to consummate the real estate transactions, which instruments are prepared for the execution by others than the said title company. In the average typical and representative transaction, such legal instruments are the warranty deed to be executed by the seller, and the note and deed of trust to be executed by the buyer. Such are legal instruments to which the Guardian Abstract and Title Company is not a party, and in which it neither has nor acquires any interest in the subject matter thereof. At times in such real estate transactions, in addition to the above legal instruments, the following legal instruments are prepared by John McQuown and Mary McQuown for execution by others than the Guardian Abstract and Title Company, in which the said Guardian Abstract and Title Company neither has nor acquires any interest in the subject matter thereof; mechanic's and materialman's lien contracts, releases, transfers and assignments, subordination agreements, correction deeds, and other legal instruments affecting the title to the real estate which is the subject matter of the transaction involved, many of which instruments are usually referred to as 'curative matter'.

"8. John McQuown and Mary McQuown, in the preparation of the legal instruments as found and declared herein, do so as the agent, representative, and employee of said Guardian Abstract and Title Company. The first loyalty of said lawyers is to the said corporation.

"9. Legal fees are charged the parties to such real estate transactions for such legal services in the preparation of such legal instruments. In the established system of operation, the seller pays a legal fee for the preparation of the warranty deed and any curative matter, and the buyer pays a legal fee for the preparation of the note and deed of trust. Such legal fees are collected by the Guardian Abstract and Title Company at the time the said real estate transaction is closed, and such are remitted monthly by the said title company to John McQuown and Mary McQuown.

"10. In the established system of operation in the majority of cases, the officers and employees of the Guardian Abstract and Title Company conduct all negotiations and have all contacts with the parties to such real estate transactions and the parties executing such legal instruments. Such parties in such cases do not see or consult with John McQuown and Mary McQuown."

Other findings were that in a majority of cases legal instruments necessary to complete real estate transactions are prepared under the supervision of the employees of the Title Company from information shown on contract signed by sellers and buyers on forms prepared by the McQuowns. That in the system of operation the parties to such real estate transactions, prior to the time of closing, are not aware that the McQuowns are performing such legal service and that they will pay attorney's fees, and are informed of such in the closing statement. That the preparation of said legal instruments in the manner found herein, constitutes the practice of law by the Title Company and is illegal. That the Title Company advertises its lawful business, which it has a right to do and such is calculated to bring customers into its place of business; that the Title Company will continue to engage in the unauthorized practice of law unless restrained. The court found that the McQuowns individually and as lawyers have violated Canon No. 43 of the Canons of Ethics, in permitting their professional services and names to be used in aid of the unlawful practice of law by the Title Company.

The judgment in its order of injunction is as follows:

"It is therefore Ordered, Adjudged, and Decreed that the Guardian Abstract and Title Company, its agents, servants, employees, stockholders, successors, and assigns, shall be forever enjoined, prohibited, and restrained from preparing, in connection with real estate transactions in which the said defendant title company issues or is obligated to issue its policies of title or mortgage insurance, any legal instruments for execution by persons not employed in its business; and to which the said defendant title company is not a party, and in which the defendant title company neither has nor acquires any interest in the subject matter of the said instrument, other than the writing and issuing of the said policies of title or mortgage insurance. In this connection, legal instruments shall include any instrument pertaining to titles to land, and shall include the following instruments: deeds, notes, mortgages, deeds of trust, mechanic's and materialman's lien contracts, releases, transfers, assignments, subordination agreements, affidavits, contracts of sale, and so-called earnest money contracts, it being the intention of the Court to include herein any and all documents and instruments affecting the title to real estate, whether specifically named or not. It is accordingly ordered that a writ of injunction so issue."

The judgment recites that all relief prayed for, not specifically granted, is denied and sets out certain acts of the Title Company as not being before the court and no order relative thereto is made.

In response to motion for additional fact findings the court found that the McQuowns represent the McQuown Mortgage Company, which company from time to time assigns mortgages to other lending agencies and that the attorneys prepare instruments in connection with such transactions and procure the issuance of mortgage title insurance from the Title Company; and that in a few instances when the Title Company issues policies of title insurance, the seller, the buyer and the lender request the McQuowns to prepare the necessary papers and pay fees directly to the lawyers.

The court further found that in some instances the contract of sale is delivered to a real estate agent for the purpose of having the deal closed, who delivers such to the Title Company, and in some instances the agent knows that a charge is made and collected by the Title Company for the account of the McQuowns for the preparation of necessary legal instruments.

We believe that the order of injunction is too inclusive insofar as it restrains the attorneys McQuown & McQuown from preparing deeds and other legal instruments for fees for themselves, and particularly so when such service is performed at the request of and with the full consent of the parties concerned to any given transaction and when there is no conflicting interest such as would impose upon the lawyers a duty to contend; in behalf of one party, for that which is his duty to another party would require him to oppose.

We believe that all parties to a transaction may employ the same attorney, or firm of attorneys to draw up all necessary legal papers to effect a conclusion of such transaction, and that an attorney may accept such employment and in so doing represent all parties fairly and with confidential relations, but if at any time a conflict of interest should arise then it is the moral and legal duty of such attorney to suggest the employment of other attorneys.

5 American Jurisprudence, Attorneys at Law, Sec. 65, p. 297, declares:

"* * * An attorney may also properly represent at the same time parties whose interests conflict, where he acts with the full knowledge and consent of both. And an attorney who acts for both parties in the preparation of a mortgage may act as agent of the mortgagee to accept the delivery of the mortgage."

Bryant v. Lewis, Tex.Civ.App., 27 S.W.2d 604, error dism.; Richards v. Wright, 45 N.M. 538, 119 P.2d 102; American Bar Association Journal, Vol. 36, p. 733 (September, 1950); Canon 6 of the Canons of Ethics of the State Bar of Texas; Campbell v. State Mortgage Corp., Tex.Civ.App., 48 S.W.2d 395, error dism.; Henderson v. Shell Oil Co., 146 Tex. 467, 208 S.W.2d 863.

We are not to be understood as condoning the system in use by the Title Company, insofar as it does, in referring the preparation of legal instruments to the McQuowns, when done without the express direction of all interested parties or with their express consent, and then only when there is no conflict of interest, requiring the attorneys to favor one or the other of the several parties.

It would have been entirely proper for the appellants to have requested the trial court for a construction or clarification of the order, such was apparently not done specifically, but request for additional findings, not given, may have presented the issue.

The court in its judgment made a number of exceptions to the effectiveness of the order.

The court did not find that there was a conflict of interest between the Title Company on the one hand and the other parties to the real estate transaction on the other, but that the first loyalty of the McQuowns is to the Title Company.

There were some instances in which an exception as to the liability of the Title Company concerning area and boundary were inserted in the mortgage title insurance policy and not in the warranty deed.

It is not shown that any loss has occurred or damage sustained by any party.

We have read and considered Hexter Title & Abstract Co. v. Grievance Committee, 142 Tex. 506, 179 S.W.2d 946, 157 A.L.R. 268, and insofar as has been shown that the Guardian Abstract and Title Company, a commercial business, is engaged in any manner in the practice of law it should be and was enjoined.

We believe that the system used by the Title Company in directly channeling legal business to the McQuowns, without the consent expressly given by the other interested parties to a transaction, is illegal and unauthorized and should be stopped but we do not believe that the Hexter decision is applicable when applied to an attorney freely selected by all parties, as we have herein set out.

It is to be observed that rules are prescribed for the trial and disciplining attorneys guilty of violation of the Canons of Ethics and provide for the initiation of such proceedings, etc.

Section 7 of Article XII, Vol. 1, Vernon's Ann.Tex.Civ.St. following article 320a-1.

Our attention is directed to the declaration of policies made by the Bar and the Texas Title Association as is set out in Texas Bar Journal, Vol. X, No. 8, pp. 384-5, concerning the recommending of counsel.

In accordance with our views expressed herein the judgment is reformed so as not to apply to the defendants John McQuown and Mary McQuown as attorneys when all interested parties request them to prepare necessary legal instruments to a transaction, and as reformed the judgment of the trial court is affirmed.

Reformed and affirmed.