Modena S. CHEATHAM, Appellant,

v.

W. Floyd FRANKE et al., Appellees.

No. 10440.

Court of Civil Appeals of Texas. Austin.

Jan. 9, 1957.

Rehearing Denied Jan. 30, 1957.

Bedford & Underwood, Paul Petty, Ballinger, for appellant.

E. C. Grindstaff, Ballinger, W. Marcus Weatherred, Coleman, for appellees.

GRAY, Justice.

Appellant, Modena S. Cheatham, sued appellees, Lizzie Franke and husband W. Floyd Franke, Alta Benge and husband C. J. Benge and George A. Cheatham to set aside and cancel written instruments executed by the parties in the partition of the estate of Dr. A. B. Cheatham, deceased. As grounds for such cancella-

tion appellant alleged that she executed the instruments relying upon the opinion of an attorney advising her that an instrument purporting to be the last will and testament of Dr. Cheatham was not a valid will and that Dr. Cheatham died intestate. She alleged that she would not have executed such instruments if such advice had not been given her, and further alleged that the instrument had been duly filed for probate and that the same was a valid will and entitled to probate as such.

Appellant is the surviving wife of Dr. A. B. Cheatham, deceased. Prior to his marriage to appellant in 1921, Dr. Cheatham was married to a first wife who died in 1919. There was born to the first marriage appellees Lizzie Cheatham now Mrs. Franke, Alta Cheatham now Mrs. Benge and George A. Cheatham. There are no other children of the first marriage and none were born to the second.

The estate of Dr. Cheatham consists of real and personal property.

The attorney who advised appellant that the purported will was not a valid will and that it was not entitled to probate as such, over the objection of appellant, appeared and participated in the trial as one of the attorneys for appellees and also, over appellant's objection, testified as a witness.

A trial to a jury was had and in answer to special issues the jury found: (1) that Judge Weatherred advised appellant that the purported will of Dr. Cheatham was not a valid will; (2) that appellant relied on such advice, and (3) that appellant would have signed the written instruments if such advice had not been given her.

On the jury's verdict the trial court rendered judgment that the written instruments were valid and binding, vesting the title of the properties in accordance with such instruments, and perma-nently enjoined appellant from probating the instrument purporting to be the will of Dr. Cheatham.

Appellant here presents seven points which are to the effect that the trial court erred: (1) in overruling her motion to disregard the jury's answer to issue 3; (2) in rendering judgment for appellees because the jury's answer to issue 3 has no support in the evidence, (3) in rendering judgment for appellees because the jury's answer to issue 3 is against the great weight and overwhelming preponderance of the evidence; (4) in overruling appellant's objections to Judge Weatherred appearing in the cause as an attorney and testifying as a witness for appellees; (5) in excluding testimony of witnesses that so far as known to them Dr. Cheatham never revoked the will offered in evidence; (6) in repeatedly excluding the purported will from introduction in evidence until near the end of the trial, and (7) in sustaining exceptions to appellant's pleadings. These exceptions were directed to appellant's pleading wherein she alleged that under the terms of Dr. Cheatham's will and her rights in the community estate she was entitled to receive designated property. The exceptions are: A. The will has not been admitted to probate and it has no legal effect, B. the partition deeds convey the property sued for, and C. this Court has no jurisdiction to admit the will to probate.

Our disposition of this appeal makes it unnecessary for us to consider points 5 and 6 and exception A. These are all matters to be presented to the probate court. Exception B presents a question to be determined upon a proper trial. Exception C is a correct statement of law which is later noticed.

As appears from our statement supra appellant's alleged cause of action is made dependent in part on her establishing the validity of the purported will of Dr.

Cheatham and this right is foreclosed by the trial court's judgment enjoining its probate.

Points 1, 2, and 3 complain of the jury's answer to issue 3 and the judgment rendered on that answer.

There is no dispute in the evidence that on the first visit of the parties to Judge Weatherred seeking his advice as to their existing rights to receive properties belonging to the estate of Dr. Cheatham that appellant exhibited the purported will to him and that the parties were in dispute as to what property it gave appellant. It is also undisputed that Judge Weatherred then advised appellant that the instrument was not a valid will. Appellant was positive in her testimony that she relied on the advice and that she would not have executed the partition deeds if such advice had not been given her. It was after this advice that the agreements leading up to the execution of the instruments were reached by the parties.

George A. (Alex) Cheatham testified:

"Q. Now, Alex, that instrument that you have in your hand, which is marked Plaintiff's Exhibit No. 4, you can see the mark right there. Plaintiff's Exhibit No. 4, was in Judge Weatherred's office and was shown to Judge Weatherred during some of the conferences that were held in his office before any papers were signed, that is true isn't it? A. Yes, sir.

"Q. And before any agreement was made between Mrs. Cheatham and you children Judge Weatherred had seen that paper and had read it? A. Yes, sir.

"Q. Hadn't he, that is true, isn't it? A. Yes, sir.

"Q. And before any papers were signed between you children and Mrs. Cheatham Judge Weatherred told you people that in his opinion the instru-

ment wasn't valid as a will, didn't he? A. That's right.

"Q. And he also told Mrs. Cheatham and you folks that in his opinion it would not stand up in Court, didn't he? A. Right.

"Q. And all of those statements were made by Judge Weatherred to Mrs. Cheatham and to you children before any agreement was made and before any papers were signed up, that is true, isn't it? A. Yes, sir."

The parties, all laymen, made four trips to Judge Weatherred's office, discussed settling their affairs and each expressed a desire to avoid going to court in such matter. An agreement was reached as to such settlement, Judge Weatherred prepared the several instruments and they were each executed in his office. However appellant testified that in so doing she relied on the advice that the will was not valid and that she would not have signed the instruments except for such advice.

Judge Weatherred testified that on the first visit to him he read the purported will, that it was discussed and that appellant

" * * * was claiming that it gave her certain property; the children was claiming that it didn't, and there was a dispute concerning it.

" * * * I told them in my opinion as a lawyer the paper wasn't sufficient to constitute a valid will, and I gave them the reasons why. I said, 'Now, a Court might, a Court might—you can never tell in this day and time—might admit it to probate. I wouldn't file such a thing for probate, because I couldn't tell you what it actually means as a matter of law.' Then I told them, I said, 'Now, if the paper is filed for probate, then by reason of the attitude of you parties there would be a contest, a law suit, over the probate of a will. Law

suits engender hatreds and animosities, and I think you folks ought to act like mother and children, stay out of Court, it is very expensive.' I think each one of them said, 'We don't want any Court, we don't want any Court; we want to try to settle this matter.' I went further and told them that if the will were admitted to probate by the Court that somebody would have to file a suit to construe the will, which would be another suit, and that there would be a question as to what the Court would hold, the meaning of the paper that had been handed it. I said, 'Now, here, if you want to try to probate it you have got a perfect right to do it; I won't accept any employment on that; if you want to try and get together and settle the case without going into Court I will do the best I can to get you parties together."

It is not disputed in the evidence that on the first visit to Judge Weatherred appellant was claiming property under the purported will and that after the advice was given that the will was not valid an agreement was made leading to the execution of the written instruments.

It is our opinion that the answer of the jury to issue 3 is against the great weight and preponderance of the evidence, is not supported by the evidence and that the trial court erred in refusing appellants' motion to disregard such answer.

Appellant having received the advice of Judge Weatherred, an attorney, as to the validity of the will was entitled to rely on it if at the time he was not her attorney but was attorney for appellees as she alleged. Aniol v. Aniol, Tex.Civ. App., 62 S.W.2d 668, affirmed 127 Tex. 576, 94 S.W.2d 425.

■ The original jurisdiction to determine whether the instrument purporting to be the will of Dr. Cheatham is a valid will and as such is entitled to

probate lies exclusively in the probate court. Constitution of Texas, Art. 5, Sec. 16, Vernon's Ann.St. Becknal v. Becknal, Tex.Civ.App., 296 S.W. 917. Such validity cannot be determined in this proceeding. Milner v. Sims, Tex.Civ.App., 171 S.W. 784, and the matter in controversy here cannot be determined in the probate proceeding. Huston v. Cole, 139 Tex. 150, 162 S.W.2d 404, Ripley v. Dearing, Tex.Civ.App., 153 S.W.2d 243. Er. ref., w. m.

■ The trial court was without jurisdiction to enjoin the probate of the purported will and the order so doing is void. Reedy v. Jones, Tex.Civ.App., 41 S.W.2d 1044. Milner v. Sims, Becknal v. Becknal, both supra.

■ At the beginning of the trial appellant made a motion that Judge Weatherred not participate in the trial of the case as an attorney because he was a material witness a fact which was known to him at the time he accepted employment. He was called to testify on the motion and testified that he was a member of the Texas State Bar; that he prepared the several instruments in controversy; that they were each signed in his office; that a citation issued in this cause was brought to him; that he accepted employment as an attorney after such citation was brought to him; that he knew he was the attorney referred to in appellant's pleadings, and that he knew he would be a material witness in the case.

The motion should have been sustained. It was overruled and Judge Weatherred participated in the trial as an attorney for appellees. He also testified, over appellant's objection, as a witness for appellees.

A code of ethics governing the professional conduct of members of the State Bar of Texas has been prescribed by the Supreme Court under Section 4 of the State Bar Act, Art. 320a–1, Vernon's Ann.

Civ.St. This code may be found in Volume 1 of Vernon's Ann.Civ.St. following Art. 320a–1, supra. Section 16, article 13 of the code provides:

"Appearance of Member as Witness for His Client. It shall be unethical for a member to accept a case when he knows that he will be a material witness, but a member may testify to any matter without being guilty of misconduct if the necessity therefor is occasioned during the trial of the case."

The necessity for Judge Weatherred testifying as a witness arose and was known to him prior to his being employed and he should not have participated in the trial as an attorney. To hold otherwise would deny any force or effect to the canons of ethics to the matters to which they relate.

It is our duty to examine the entire record and determine whether the judgment can be affirmed on any theory of law applicable to the case. 3–B Tex.Jur. Sec. 875, p. 280. Then there arises the question: Can the judgment be affirmed because there is an absence of proof that Judge Weatherred was appellees' attorney at the time he gave the opinion complained of?

The record shows that Judge Weatherred was attorney for appellees during the trial and he testified he was employed by them. In this state of the record the law of presumptions is applicable. Judge Weatherred was authorized by appellees to appear and act for them at the trial and in so doing the law presumes that he acted fairly, honestly and in good faith. 20 Am.Jur. p. 223, Sec. 229. 31 C.J.S., Evidence, § 126, p. 745. Also that he acted legally. 31 C.J.S., Evidence, § 134, p. 769. 17 Tex.Jur., p. 266, Sec. 69. When these presumptions are indulged in support of appellant's pleading she was relieved of offering further evidence as to the status of Judge Weatherred until the presumptions were rebutted by evidence. 20 Am.Jur., p. 161, Sec. 157. 31 C.J.S., Evidence, § 117, p. 731.

The evidence does not show who selected Judge Weatherred for consultation as to the will or who (appellant or appellees) was represented by him at such consultation. However no point was made of this matter in the trial court and it is not presented here.

Perhaps the absence of this point in the trial court and here is due to the fact that the parties recognized the established rule quoted in Barreda Corporation v. Ballenger, Tex.Civ.App., 116 S.W.2d 442, 448. Er. dism. The rule there quoted from People v. Gerold, 265 Ill. 448, 107 N.E. 165, 177, Ann.Cas.1916A, 636, is that it

"* * * has long been firmly established that an attorney cannot represent conflicting interests or undertake to discharge inconsistent duties. When he has once been retained and received the confidence of a client, he cannot enter the service of those whose interests are adverse to that of his client or take employment in matters so closely related to those of his client or former client as in effect to be a part thereof. Weeks on Attorneys (2d Ed.) §§ 120, 271; 1 Thornton on Attorneys, § 174."

See also Harney v. Pickens, 120 Tex. 268, 37 S.W.2d 717 and Easley v. Brookline Trust Co., Tex.Civ.App., 256 S.W.2d 983, 989. The matter is not mentioned in appellant's motion that Judge Weatherred not be permitted to participate as an attorney. When the motion was presented and overruled by the court he was attorney for appellees and under the rule supra could not have been such attorney if in fact he had theretofore been in the employ of appellant.

If in support of the trial court's judgment it is said that appellant's alleged cause of action must fail because of the absence of proof that Judge Weatherred was appellees' and not appellant's attorney when he gave the opinion as to the validity of the will then the presumption that he was acting honestly and with proper profession-

al conduct by representing appellees at the trial is violated.

The judgment cannot be sustained on the theory of an implied finding by the trial court as to the status of Judge Weatherred because there is no conflict in the evidence. Willeke v. Bailey, 144 Tex. 157, 189 S.W.2d 477. If the wording of the judgment is to be considered then it excludes any implied finding because after its formal parts it sets out the issues, the jury's answers and says: "It is, therefore, in keeping with said answers and verdict by the Court ordered, adjudged and decreed that * * *"

An inference that Judge Weatherred was not appellant's attorney at the conferences may be drawn from his own testimony. After, or before, giving his opinion that the will was not valid he nowhere says that he advised appellant as to her rights in the properties belonging to the estate by reason of her being the survivor of the marriage, nor that he discussed with her the status of such properties as being the separate property of Dr. Cheatham or belonging to the community estate. This justifies the conclusion that Judge Weatherred could not represent all parties at the conferences. Applicable to the facts before us is the statement of the court in Bryant v. Lewis, Tex.Civ.App., 27 S.W.2d 604, 607, Er. dism.:

> "From the foregoing we think it clear that, even if the employment were such that Lewis could represent both parties by agreement, there was lacking that full explanation to her of the full nature and extent of the conflict of their interests, as would qualify him to act for both."

We will dispose of the appeal on the points presented.

We are convinced that because the answer of the jury to issue 3 cannot be permitted to stand the judgment of the trial court must be reversed and the cause remanded and that the injunction restraining the probate of the purported will must be dissolved. We are also convinced that because appellant's alleged cause of action here depends in part on her contention that the purported will is valid and entitled to probate the trial of this cause must be suspended pending a final judgment in the probate proceeding.

The injunction issued by the trial court is dissolved. The judgment of the trial court is reversed and this cause is remanded with instructions that the trial be suspended pending a final judgment in the probate proceedings.

Injunction dissolved trial court's judgment reversed and cause remanded with instructions.

ARCHER, Chief Justice (concurring).

I concur in the reversal and remand of this case based on the action of the trial court in enjoining the probate of the will. See: The authorities as set out in Associate Justice Gray's opinion.

I observe further that irrespective of the outcome of the will without predetermining in anywise, that the parties are probably estopped from attacking the instruments partitioning the estate, since all parties had consulted with Mr. Weatherred and were fully cognizant with the extent and values of the respective properties.

I am concerned as to the propriety of an attorney who has consulted with all parties in the settlement of an estate, subsequently representing one as against another of such parties, and believe that it would have been more in keeping with the high character of the attorney and his professional relationship with all of the parties to have refrained from participating in the trial of the cause.

HUGHES, Justice (dissenting).

I respectfully dissent. I do so because in my opinion there was only one judgment which the Trial Court could have rendered

under this record, the judgment he did render—a judgment for appellees. If this is correct then intermediate errors are of no consequence. 3-B Tex.Jur. Sec. 875.

In my opinion appellant failed to prove a cause of action in that she failed to prove that appellees were legally responsible for the advice given by Mr. Weatherred regarding the will of Dr. Cheatham, or at any rate that they were any more legally responsible for such advice than was appellant.

Appellant pleaded that appellees and their attorney represented to her that the will of Dr. Cheatham was not a valid will and that but for such representations made by appellees and their attorney the instruments involved would not have been executed.

We quote from appellees' brief:

"Appellant's statement of the nature of the case is substantially correct except wherein it states that Appellant signed the instruments that she is seeking to cancel 'in reliance upon the erroneous opinion of an attorney of Appellees' that a certain instrument claimed by her to be the last will of her deceased husband Dr. A. B. Cheatham was not a valid will' and that she signed such instruments 'in reliance upon such erroneous opinion.' The attorney referred to is W. Marcus Weatherred of Coleman, Texas. He did not render 'an erroneous opinion' and Appellant did not rely on 'an erroneous opinion' in the execution of such instruments, and the attorney was not, at that time, 'an attorney of Appellees' but was an attorney that Mrs. Cheatham and the heirs of her deceased husband all consulted together as to the settlement of the Dr. Cheatham estate, all of the parties

desiring to stay out of Court and to secure the services of such attorney in keeping them out of court, and in settling their property disputes agreeably, and all papers having been drawn in strict accordance with the agreement of all parties, Plaintiff and Defendants, with full knowledge of the facts, and of the rights of the parties."

The evidence shows that the parties on several occasions went to the office of Mr. Weatherred and sought his advice regarding the purported will and estate of Dr. Cheatham.[1] There is no evidence that Mr. Weatherred represented one of these parties any more than he did the others. Under these facts the law is plain as shown by the following quotation:

"One is not to be held liable for the representations of a third person when there is no evidence to connect him with the making of the representations. And when the principals in a transaction have jointly referred to a third person, who was as much the agent of one as the other, neither may be charged by the other with liability on account of such statements, there being no showing of collusion." 20-A Tex.Jur. p. 131.

In Goodwin v. Daniel, Tex.Civ.App., Dallas, 93 S.W. 534, 536, writ of error denied, two directors in the same corporation called upon a bookkeeper employed by the corporation to prepare a statement for their use in the sale of corporate stock from one director to the other. The statement was prepared and used by the directors in the stock transaction but it was allegedly false. We quote from the opinion:

"Can the rendering of the statement of the bookkeeper of the millinery company be regarded any more the

1. There certainly is no impropriety in an attorney advising a family group collectively when, as here, the advice is so sought. See Guardian Abstract & Title Co. v. San Antonio Bar Ass'n, Tex.Civ. App., Austin, 278 S.W.2d 613, loc. cit. 620, reversed Tex., 291 S.W.2d 697.

act of Daniel than that of appellant? We have reached the conclusion that these questions should be answered in the negative. As has been seen, the misrepresentations alleged and relied upon by appellant, alone, as a basis for recovery, are embraced in the written statement of the assets and liabilities of the appellee Daniel Millinery Company, taken from the books of the company and received by appellant in the due course of mail January 6, or 7, 1904. That this statement was prepared and delivered to appellant at the joint request of himself and appellee Daniel, and was no more the product of Daniel than appellant, we think conclusively established by the evidence; * * *.

"There is no evidence to sustain the charge of actual fraud, and we think it appears as a fact, established beyond controversy, that the written statement in question, and which appellant claims induced him to part with his stock for the price received, was procured at his own instance, was as much his own statement as it was the statement of appellee Daniel; that, under the circumstances, he should not be heard to complain that he had been misled by said statement to his injury, and obtain relief in either of the respects sought in this action. Not being distinctively the statement and representation of Daniel, appellant was not authorized to rely upon it as such, and, whether true or false, we need not inquire, for in such case its truth or falsity becomes unimportant in the disposition of this appeal."

Relief was denied the injured director in that case and I believe a similar ruling should be made here and that there is no occasion to inquire into the validity of the advice given by Mr. Weatherred.

The contract between the parties here was based on their agreement that Dr.

Cheatham died intestate. They had every right to so agree. Wade v. Wade, 140 Tex. 339, 169 S.W.2d 1008. If, as I believe, such agreement is not subject to the attack upon it made by appellant then the purported will, even if valid, has been legally extinguished and there is no will or purported will to be offered for probate. Stringfellow v. Early, Austin, 15 Tex.Civ. App. 597, 40 S.W. 871. See also Robbins v. Simmons Estate, Tex.Civ.App., Galveston, 252 S.W.2d 970, writ ref. N.R.E. and authorities therein cited.

I would affirm.