## Doc Willeke v. M. E. Bailey et al.

No. A-523.  Decided July 11, 1945.
Rehearing overruled October 17, 1945.
(189 S. W., 2d Series, 477.)

*Kerr & Gayer,* of San Angelo, *Dan Moody* and *J. B. Robertson,* both of Austin, for petitioner.

*James P. Farrell* and *Robt. T. Neill, both* of San Angelo, for respondents.

MR. JUDGE BREWSTER, of the Commission of Appeals, delivered the opinion for the Court.

Doc Willeke, petitioner, sued M. E. Bailey and R. H. Fenton, respondents, for the possession of approximately one-half acre of land and for damages for withholding it from him after the expiration of a lease contract. In response to a jury verdict the trial court rendered judgment for Willeke, which was reversed by the Court of Civil Appeals and rendered for respondents. 185 S. W. (2d) 456.

Willeke alleged that he had rented the land to Bailey "on or about the ____ day of January, A. D. 1942," as a place to operate a liquor package store; that he let to Bailey for a term of two years; that after the term expired, respondents unlawfully failed and refused to vacate the premises, to his damage in the sum of $150 per month from January 1, 1944.

Respondents answered that after some negotiations by respondent Fenton, who was a real estate agent, Willeke and Bailey executed on January 24, 1942, a written agreement, relevant parts of which are as follows:

"San Angelo, Texas,
"January 24, 1942.
"This agreement entered into this the twenty-fourth day of

January between Doc Willeke and M. E. Bailey, that the party of the first part leases to the party of the second part, 1/2 acre more or less on the right hand side of road on Highway No. 67, being 4 3/10 miles from the present incorporate limits of the City of San Angelo, Texas.

"The rental for this lease is Fifty Dollars and no cents monthly to be paid in advance monthly for first twelve months and Sixty-five Dollars thereafter, so long as conditions are favorable.

"This lease between both undersigned is for a period of eighteen months, with option of extension from year up to five years from date.

"It is further agreed that if the precinct should be declared out of limits for sale by a package store that this agreement be declared null and void.

"R. H. Fenton        Doc Willeke
"Witness.           Party of the First Part
                    M. E. Bailey
                    Party of Second Part."

Respondents answered further that although the original 18 months period had expired, they had exercised their option to continue to use the premises as provided in the lease, by continuing to pay the monthly rents after the primary term.

After denying under oath the execution of the contract pleaded by respondents, Willeke alleged that he had executed to Bailey a lease contract "about the last of January 1942" to expire "about the 1st of February, 1944"; that the rent for the first year was to be $50 per month and for the second $65 per month; that it contained no provision for an "extension or option"; and that the contract "is in the possession of the defendants."

Respondents in turn denied under oath the execution of the contract alleged by Willeke.

In answel to four special issues the jury found: (1) that Willeke signed and delivered to Bailey a lease contract for two years, beginning Feb. 1, 1942, at $50.00 per month for the first year and $65.00 per month for the second; (2) that the reasonable monthly rental value of the land from and after Feb. 1, 1944; was $100.00; (3) that the instrument of writing alleged by respondents dated Jan. 24, 1942, and quoted above was signed

by Willeke; but (4) that that instrument did not authorize Bailey to extend the term "to five years from January 24, 1942, at $65.00 per month."

No issue was given or requested as to which of the two contracts referred to in special issue 1 and 3 was executed first.

Willeke attacks the holding of the Court of Civil Appeals that the contract claimed by respondents were executed after that claimed by Willeke.

■ With a jury finding that both contracts were made, it is quite evident that the terms of the one agreement are so inconsistent with those of the other that the two cannot subsist together. In that situation the rule is that the one made first is conclusively presumed to have been superseded by the other. 17 C. J. S., Contracts, Sec. 395, p. 886; 32 Am. Jur., Landlord and Tenant, Sec. 147, p. 147.

In view of the controlling effect which must therefore be given to the fact as to which of the alleged contracts was executed first, we have studied the statement of facts to determine the correctness of the holding of the Court of Civil Appeals.

Willeke testified that he executed only one contract with respondents; that it was typed on the back of an envelope; that when he signed it only Bailey and one Roy Scott were present; that it was a lease for two years and no more; that he signed this instrument in January; that he was positive it was more than a day before he went to the hospital, and that it was "I imagine a week, maybe longer" before he entered the hospital; that he went to the hospital on Sunday, which "I imagine" was on January 25, and remained there six or seven days; and that the lease was not signed on Saturday because Scott was "out of town every Saturday."

A calendar offered in evidence showed that January 24, 1942, was Saturday.

Scott testified that about the middle of the month of January, "anywhere from the 12th to the 25th," but before Willeke went to the hospital, Scott and Bailey went to Willeke's home to talk with Willeke about a lease agreement; that while witness did not read the agreement, he knew it was typed on the back of an envelope; that he saw Willeke sign it; and that that was the only time he had gone to the Willeke home with Bailey.

Mrs. Willeke testified that two or three days before Willeke

entered the hospital Bailey and Scott came to their home and talked to him about some business relating to a package store.

The only other person involved in the transaction was Bailey, and it is in his testimony that Willeke now asserts is to be found a conflict with the testimony of the Willekes and Scott. Bailey unequivocally denied that the contract testified to by the Willekes and Scott was ever executed. He testified to the execuion by Willeke of the contract of date January 24, 1942, above quoted, with Fenton as a witness, and that it was the only lease contract executed by them. He testified, further, that after Willeke returned from the hospital he .did go with Scott to see Willeke but that no contract was executed on that occasion, the purpose of the visit being to talk to Willeke about the removal of some improvements. He did not testify that this was the only time he had gone with Scott to see Willeke.

With Bailey denying the execution of any such contract as Scott and Willeke testified was made before Willeke went to the hospital, Baily's testimony that he did go with Scott to see Willeke about another matter *after* Willeke returned from the hospital did not present a conflict as to when Willeke's alleged contract was executed, merely because Scott said that he had gone with Bailey only once to see Willeke. We conclude, therefore, that the undisputed evidence does show that the contract claimed by respondents was executed after that alleged by Willeke.

It follows that Willeke's contention that it must be presumed, under Rule 279, T.R.C.P., that the trial court found that Willeke's contract was executed after that claimed by respondents must be overruled for the reason that there was no evidence to support any such finding. Under that rule a finding can be presumed only when there is a conflict in the testimony.

Willeke insists that the Court of Civil Appeals erred in rendering judgment against him on the ground that the contract alleged by respondents was executed after his two-year lease, because (1) that issue was not presented by the pleadings, and (2) no such contention was made by respondents in the trial court in their motion for a new trial. Both points are overruled.

Respondents pleaded they were in possession of the premises under a valid and subsisting lease contract. While it is true their pleading as to the contract claimed by Willeke and established by the verdict was restricted to a denial, nevertheless the effect

was the same. Whether Willeke had no two-year contract at all as they alleged or did have one as the jury found, which antedated that asserted by respondents as the undisputed evidence shows, the latter still had a valid and subsisting lease, just as they alleged.

In their motion for a new trial respondents alleged that the trial court erred in not giving effect to their contract, reciting that, after Willeke had denied under oath its execution and the jury had found that he did sign it, there was then "only one valid, written contract before the court for determination" and "it was the duty of the Court to render its judgment for the defendants thereon." Under the facts of this case that language was sufficient to call the trial court's attention to the question under consideration.

■ Willeke contends that the description of the land was too indefinite to constitute a binding contract and was violative of the statute of frauds. While it may be conceded that under other facts the proposition would be sound, yet we believe it is not so in this case. After Bailey rented the site Willeke went out and indicated where the fence lines were to be erected; and one Soto, an employee of Willeke's, built them. Respondents then constructed the necessary improvements within the inclosure, went into possession and paid rent thereon regularly for more than two years,—beyond that Willeke asserted was the term of their lease. Under those circumstances we think the contract was so executed as to take the transaction out of the statute of frauds. See Robertson v. Melton, 131 Texas, 325, 115 S. W. (2d) 624, and the autholities there cited. While it is true that Willeke testified that Soto did not build the fences on the lines pointed out, nevertheless Willeke, knowing that, collected his rents and raised no objection on account of the error for more than two years. So he must be held to have ratified the act of his agent in locating and building the fences.

■ We agree with the Court of Civil Appeals that the phrase, "so long as conditions are favorable," concluding the second paragraph of the contract claimed by respondents, does not render the contract void for uncertainty, because the third paragraph of the contract definitely states that the lease is for 18 months with an extension option.

■ Finally, Willeke contends that "the Court of Civil Appeals erred in rendering judgment giving Respondents the right to possession of the land sued for during a full term of five years

under the lease contract, * * * because said contract, if valid, gave Respondents only an option for extension of the term thereof for an uncertain period of from one year up to five years from date thereof, and there was no pleading of the exercise of option for a definite term of extension and no evidence ·that Respondents had done anything to exercise such option except to retain possession and to continue to deposit the monthly rental in a bank to Petitioner's credit."

We think both the pleading and the evidence show that respondents did all they were required to do in order to exercise whatever option they had under the contract claimed by them.

The pleading by respondents on this issue was as follows: "Commencing January 24, 1942, Defendant Bailey paid plaintiff the sum of $50.00 per month and continued so to do on or before the 24th day of each month thereafter for a period of 18 months and commencing June 24, 1943, defendants paid plaintiff $65.00 and has continued to pay said amount on or before the 24th day of each month and is still paying said amount in accordance with the terms of the written agreement set out above. Defendants exercised their option to extend the term of the lease from year up to five years and in doing so have paid the rents provided for in said lease agreement to date and have not been in default."

The testimony of all parties, including Willeke, showed that the rent payments were made as alleged. Monthly payments of rent in accordance with the terms of the contract after the expiration of the primary term of 18 months constituted an election to exercise their option and was sufficient notice to Willeke of that election. Jones v. Gibbs, 133 Texas, 627, 130 S. W. (2d), 265. Since the contract did not require formal notice, the fact that respondents so continued in possession was enough. Hall v. Willmering. (Civ. App.), 209 S. W., 226 (er. ref.).

But we do not hold that by the mere fact of holding over and paying the monthly rental after the expiration of the primary term of 18 months respondents then and thereby elected to hold for the full five-year term. If the opinion of the Court of Civil Appeals is susceptible of that construction, as Willeke asserts, his contention that there is no supporting pleading is correct. What respondent alleged was that they exercised their option to extend the lease *"from year up to five years."* (Italics ours.) Undoubtedly the language of the contract "from year up to five years" means from *one* year up to five years, and that is evidently what respondents meant when they alleged that they

exercised their option to extend the lease "from one year up to five year." There is no evidence that respondents did anything to soignify an exercise of the option of extension except to continue in possession at the lapse of the primary term and to pay the monthly rentals as the contract provided. In that situation we do not thing it can be said that when they made the first monthly payment after 18 months had passed they thereby evidenced an election to extend the lease for the full 3 1/2 years. Rather, by that act they elected to extend the least for a second year, and so on yearly up to 3 1/2 years. That construction comports with the language "from year up to five years from date" (of the contract), which clearly means from one year up to 3 1/2 years after the primary term expired. It is also in analogy with the rule that where a tenant under a lease of a storehouse for one or more years holds over after the expiration of the term, the holding over is a lease for a year binding on both parties, in the absence of an express or implied agreement to the contrary; and that a second holdover yqear is created by holding over in similar manner as under the first holdover year. Hunger v. Toubin Bros., Inc., (Civ. App.), 164 S. W. (2d) 765 (er. dism.), and authorities there cited; Anno. II, 64 A. L. R. 309.

So, in order that there may be no misunderstanding, the judgment of the Court of Civil Appeals is reformed so as to render judgment for respondents for possession of the leased premises for one year after July, 1943, and for such additional one-year periods thereafter as they may exercise their option under the contract and in the manner above discussed, to extend it up to January 24, 1947.

As reformed, the judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court, July 11, 1945.

Rehearing overruled October 17, 1945.