**Earl ROGERS, Appellant,**

v.

**YARBROUGH CONSTRUCTION COMPANY**
**et al., Appellees.**

**No. 10397.**

Court of Civil Appeals of Texas.

Austin.

May 16, 1956.

Rehearing Denied June 13, 1956.

Tisinger & Sloan, Austin, R. Sam Rea, Austin, of counsel, for appellant.

Benton Coopwood, Cofer & Cofer, Austin, for appellees.

GRAY, Justice.

Appellant Earl Rogers sued appellee Yarbrough Construction Company to recover on quantum meruit for work done and materials furnished on a construction project in the City of Austin. Saint Paul-Mercury Indemnity Company, a surety for appellee, was a party defendant but it is not affected by the judgment rendered, is not a party here and will not be further noticed.

Appellee is a partnership composed of S. O. Yarbrough and C. D. Yarbrough. It was the general contractor for the construction of a housing project for the Housing Authority of the City of Austin which project is known as Oaklan Homes. On January 26, 1952, appellant as subcontractor entered into a written contract with appellee whereby he contracted to furnish all labor, materials and equipment necessary to complete all "sidewalks, garbage can slabs, curb and gutter, porch steps, steps on site and set handrail for same, expansion joint, service drive, curb inlets, storm sewers and concrete trough."

The contract provided that the improvements were to be constructed according to the plans and specifications for the project and that appellant was to be paid therefor the sum of $36,000 subject to additions and deductions for changes to be agreed upon in writing. Pursuant to the said contract appellant began work, furnished labor and materials and was paid $33,001. Later difficulties arose between the parties as to the progress of the work, the parties met and discussed the matter with the result that appellee took over and finished the work called for in appellant's contract.

Appellant alleged that appellee failed and refused to allow him to finish the contract and sued for the reasonable value of services and materials furnished by him and alleged such value to be $17,500 additional to the $33,001 paid to him.

Appellee answered and among other defenses alleged that:

"* * * the plaintiff, in violation of the provisions of his sub-contract, consistently failed to prosecute the work diligently or without undue delay when requested by the defendants to commence or continue work. Finally on or about September 16, 1953, defendants in writing notified plaintiff to resume work under the contract. Thereafter the plaintiff expressed a desire and threatened to abandon the work and said contract. Shortly after September 16, 1953, it was agreed by and between the plaintiff and defendant Yarbrough Construction Company, that said Company would complete the work required under said sub-contract and would back charge plaintiff's contract with the cost of completing said work, such cost to be computed in accordance with unit prices used by plaintiff in previous estimates. Thereupon in accordance with said agreement defendant completed said work * * *."

Appellee admitted it was indebted to appellant in the sum of $149.70.

A jury trial was had and at the conclusion of the evidence appellant stated that he was not seeking to recover any sum of money under the written contract. He also denied certain charge backs made against him by appellee.

Five special issues were submitted to the jury; however, issue 4 was not answered, the jury reporting that it was unable to agree on an answer to that issue.

The jury found: (1) that appellee interfered with the work of appellant; (2) that such interference was material; (3) that the sums of money paid to appellant by appellee did not fairly compensate him for the services, materials and labor furnished on the project, and (5) that

"* * * plaintiff agreed with the defendant that the defendant should take over and complete the unfinished portions of the concrete subcontract for the plaintiff and deduct from the

contract the unit price on the work remaining to be done on said contract, which unit price plaintiff had been using in his former estimates on said job?"

Unanswered issue 4 was:

"From a preponderance of the evidence, what sum of money, if any, in addition to that already paid, if now paid in cash, would fairly and reasonably compensate Earl Rogers for the material, labor and services performed by him and his organization on the Oaklan project during the period that such services were performed?

"Answer this question in dollars and cents, if any."

The trial court received the jury's verdict and rendered judgment for appellee for $821.78. This sum appears to have been arrived at by adding to the sum of $149.70 supra back charges made against appellant but questioned by him. The judgment recites that the sum of $871.78 is due under the contract between the parties.

It is our opinion that the jury's answer to issue (5) supra presents the controlling question here.

The record shows that the work contracted to be done by appellant followed grading and excavation work done by one Lee Maners who was not subject to the orders of appellant and that appellant did not remain constantly on the job but came when the grading and excavation had been done and was ready for him to proceed. Delays in the progress of appellant's work appears to be the source of difficulties between the parties.

Appellant testified that on September 17, 1953, he saw Carlton (C. D.) Yarbrough on the job; that they had a conversation; that he was then told appellee was going to take over the work, and further testified:

"Q. What did you say to him? A. Well, I told him since he was going to take over anyhow, we might as well settle up, and he said it was all right,

he would settle up with me. He said, 'What basis are we going to settle up?' And I asked him what he meant, and he said, 'Well, how about the unit price?' And I said, 'The only way I know to do it is to do it fair, is to take the estimates I turned in every month, and what I turned in for curb and gutter and what I turned in for sidewalks, and what I turned in for steps, use those unit prices.' That is the only way he could have done it.

"Q. All right, and did you agree to release him or turn him loose— A. No, sir.

"Q. * * * or anything of that kind? A. No, sir.

"Q. Well, what was this settling up business? What did that consist of? A. I needed the money, and if wasn't going to let me do it, I might as well take what I could get."

Carlton Yarbrough testified by deposition as follows:

"Q. Now, tell me everything that you told Earl Rogers that morning that you took over the work, please, sir. A. Earl asked me to meet him at the job and go over that, and I told him that we were going to take it over and finish it ourselves, and he told me, he said, 'You can't do that work as cheap as I can.' He said, 'You will ruin me on it.' I told him that the way things had been going, Dad and I had decided that we were going to take it over and finish it so that we could turn the thing over to the Housing Authority and stop our time. It was over, and I don't remember how it got around to it, but Earl agreed that if we would complete that job and credit his account at the unit prices for the work that was to be completed, at the unit prices that he had used in his estimate, that he would agree to us going ahead and finishing the job.

* * * * * *

"Q. Now, are you saying that you understood Mr. Rogers to tell you that

it was agreeable with him for you to take over the work? A. Yes, on that basis.

"Q. On unit prices? A. Yes."

He further testified that the only thing appellant protested "was it would cost us more for us to do it than for him to do it."

Willis Hodges testified that for a part of the time he was construction foreman on the Oaklan job; that he was present and heard the conversation between appellant and Carlton Yarbrough about appellee taking over the work and charging appellant the unit prices. He testified:

"Q. * * * Just what did Mr. Rogers say to that? A. Well, that is what he said, that would be all right, if we proceeded with the work and taken it over, that it would be all right with him at the unit price, and that is what they agreed on.

"Q. And you were there when they did agree? A. Yes, sir."

In view of the jury's finding that the parties made the agreement alleged by appellee we must now analyze the agreement and determine its effect from the facts, the circumstances and the implied findings of the trial court. And also decide whether the jury's failure to answer issue 4 requires that a mistrial be declared.

■ Of course the parties were free to make an agreement altering their legal rights and obligations under the written contract. That there were difficulties as between the parties as to the performance of the contract by appellant is without dispute, the dispute being whose fault caused the delays.

■■ Appellee wanted the work finished in order that it could turn the job over "to the Housing Authority and stop our time." Appellant had a financial interest in the unfinished work to the extent of his profit to be realized in performing it. He said "I needed the money * * * I might as well take what I could get." Thus there was consideration for the agreement. The

evidence is conflicting as to what the parties intended to be the effect of their agreement. Under the judgment rendered it must be presumed that the trial court impliedly found that in making the agreement the parties intended to determine and settle their rights under the contract. Under the evidence and the record such implied finding is supported and is presumed. Rule 279, Texas Rules of Civil Procedure; Willeke v. Bailey, 144 Tex. 157, 189 S.W.2d 477.

■ It was proper to plead the agreement in defense of appellant's alleged cause of action and with findings supported by the evidence that the parties intended thereby to settle and determine their rights under the contract appellants' right of recovery under his alleged cause of action was barred. The terms of the agreement changed appellant's rights existing at the time it was made to such extent that prior existing rights and rights under the agreement cannot exist together and the agreement supersedes prior rights. Willeke v. Bailey supra.

Under the pleadings and the evidence issue 5 was a material and controlling issue and the trial court did not err in submitting it.

The judgment rendered awarded appellant a recovery under the agreement—(the amount due under the contract). He says the trial court erred in rendering judgment for this amount. We interpret appellant's brief to contend that he was entitled to recover on quantum meruit and not on the agreement. We think he has not declined to accept the award in the event the trial court's judgment is affirmed for otherwise he would have filed a remittitur.

■ The jury's finding in answer to issue (5) supra together with the implied findings of the trial court require that the rights of the parties be determined under the agreement. Their rights being fixed by the agreement it became immaterial whether appellee materially interfered with work of appellant; whether the sums of money

paid to appellant had fairly compensated him for services, materials and labor furnished (whether appellant had suffered a loss or had made a profit under his contract and his right of recovery therefor being a matter he was then free to contract away or retain to himself). For these reasons the jury's answers to issues (1), (2) and (3) become immaterial and not controlling. For the same reasons and for the further reason that the agreement superseded prior rights the jury's failure to answer issue (4) does not require that a mistrial be declared.

During the progress of the trial while appellant was present and available as a witness he offered in evidence his own oral deposition taken by appellee. After some three pages of the deposition had been read numerous objections were made by appellee and some of such objections had been disposed of but not the objection that appellant be required to testify prior to receiving in evidence his deposition. The jury was retired and the following occurred:

"The Court: Gentlemen, I believe from what is indicated here in the first three pages of this deposition, it would be better to let—I am not precluding you by this ruling from offering any parts of these depositions in evidence, but I believe the way the objections have started, I think it would be more orderly from the standpoint of the Jury to have Mr. Rogers to testify from the witness stand, and then if you want to offer any of these things in the final wind-up, we will consider that.

"Mr. Tisinger: Note our exception.

"The Court: I appreciate your suggestion with reference to time-saving, but I believe the Jury can understand the testimony, it would be better for them if they have a question and answer line of testimony from the witness, rather than having these continual objections all the way through the reading. It is almost impossible for them to follow that.

"Mr. Tisinger: Well, Judge, one of the main reasons—

"The Court: I want you to understand I am not precluding you from offering any parts of these depositions in evidence, subsequent to the party testifying. If you want to come back after he is through and offer certain parts of them, we will consider that at that time.

"Mr. Tisinger: Yes, sir. Note our exception. I want it, just either on the record or off, the main reason for doing it this way, so that you will understand, he talks too derned fast, and he just rattles. He is my client, and I love him, but I was trying to get this clear before the Jury without a lot of—

"The Court: If the witness will just try to concentrate on the question and answer the question without elaborating, simply answer the questions as they are asked him and just stop right there—

"Mr. Coopwood: That is just the point in the deposition, he rattled.

"Mr. Cofer: We didn't ask any question for four pages there.

"The Court: The point I am making is that we want to present this testimony that is important to the trial of this case, and to have these objections one right after another, the Jury can't follow any trend of continuity in that type of proceeding. I believe we had better take a hitch at it the other way.

"Mr. Tisinger: Thank you, Judge."

Appellant here complains that the trial court erred in his ruling supra.

██ The fact that a party is present and available to testify as a witness at the trial does not prevent his deposition being received in evidence.

Prior to the proceedings supra appellant's attorney had stated to the court that appellant would testify as a witness but

that in the interest of time he wanted to read the deposition first.

The complaint merely relates to the conduct of the trial and is addressed to the discretion of the trial court without any showing that such discretion was abused. Southern Pine Lumber Co. **v.** Andrade, 132 Tex. 372, 124 S.W.2d 334. Appellant was not denied the benefit of his deposition or of his own testimony as a witness. The most that can be said is that the trial court directed the order of proof and because there is no showing of an abuse of discretion in so doing error is not presented. 3–B Tex.Jur. p. 420, Sec. 927.

The judgment of the trial court is affirmed.

Affirmed.