**MONTGOMERY ELEVATOR COMPANY, Appellant,**

v.

**TARRANT COUNTY, Texas, Appellee.**

**No. 18285.**

Court of Civil Appeals of Texas, Fort Worth.

July 17, 1980.

Bailey, Williams, Westfall, Lee & Fowler, and David R. Norton, Dallas, for appellant.

Tim Curry, Dist. Atty. of Tarrant County, and Gerald Summerford, Asst. Dist. Atty., Fort Worth, for appellee.

## OPINION

MASSEY, Chief Justice.

By our disposition on appeal we reverse the judgment of the trial court with remand for new trial the suit of Montgomery Elevator Company; and we reverse the judgment awarding relief to Tarrant County and dismiss the Tarrant County suit for want of jurisdiction of the trial court to have entertained it.

This case involves two contracts; a maintenance contract and a subsequent contract to complete repairs of items disputably covered by the previous maintenance contract.

Tarrant County granted a maintenance contract to Montgomery Elevator Company. For a set annual fee Montgomery was to maintain the elevators in the Criminal Courts Building located in Fort Worth, Tarrant County, Texas. The building houses several courtrooms as well as the Tarrant County jail.

In the process of servicing the elevator generator, housed in a "penthouse" located on top of the Criminal Courts Building, Montgomery's serviceman had observed on several occasions water (as high as ankle deep) on the floor surrounding the generator. The accumulation was apparently the result of a leaky roof. Tarrant County was subsequently notified about the roof's condition and the danger involved to the generator. Specifically, Tarrant County was warned several times that the mixture of water and the high voltage produced by the generator could result in an explosion; and that the roof should be repaired as a preventive measure.

Within four months after first being notified the generator exploded. Nothing had been done by Tarrant County to repair the roof or remedy the accumulation of water.

Upon discovery of the breakdown Montgomery Elevator was summoned. Montgomery responded, noted the dismembered generator and contacted the purchasing agent for Tarrant County. Together they reached an estimation of the repair cost. By the county's own admission it gave Montgomery every indication that it fully intended to pay for the repair. In fact, prior to completion of the installation work but subsequent to the purchase of the replacement generator, Montgomery submitted an invoice for $4,865.12 which was promptly paid by the county.

Upon completion of the job and receipt by the county of an invoice for $1,255.25 as final balance due, Tarrant County indicated for the first time its intention to not pay, contending the entire expense to have been covered by the Montgomery maintenance contract. The $1,255.25 was for services and materials alleged to have been necessary immediately following installation of the replacement generator and restoration of elevator service. This amount was supported by a "companion" contract executed simultaneously with the first "repair" contract (both contracts were entered into after the maintenance contract).

Montgomery brought suit in county court for the $1,255.25. Tarrant County denied liability, asserting that all parts and labor were covered by the pre-existing maintenance contract. Additionally, Tarrant County brought its suit by counterclaim for $5,931.62, a figure representing the amount it alleged to have been erroneously paid Montgomery for the replacement of the generator and accompanying expenses for work completed prior to the contract on which Montgomery now sues. No fraud was alleged in Tarrant County's counterclaim; only payment by mistake was averred, plus claim of no liability for the $1,255.25 for which Montgomery sued on a contract theory.

Trial was to the court. Judgment was rendered that Montgomery take nothing; and that Tarrant County recover $4,865.12 on its' counterclaim. From this judgment Montgomery has appealed.

## ON THE SUIT OF TARRANT COUNTY

Montgomery objected below and contends on its appeal that Tarrant County's counterclaim exceeded the jurisdictional limits of the county court. We agree. The cross action was for an amount without the county court's jurisdiction. That court lacked the power to adjudicate Tarrant County's claim and should have sustained the Montgomery motion to dismiss it. 15 Tex.Jur.2d p. 520, "Courts", sec. 81 "Where defendant files claim in excess of jurisdiction" (1960); and 2 McDonald, Texas Civil Practice, p. 293, "Pleading: Answer", sec. 7.51.2 "(Counterclaim. A. Normal Civil Action)—(b) Amount in Controversy Exceeding Jurisdictional Maximum" (1970 Rev.). Acting in the place and stead of the trial court, we dismiss Tarrant County's suit and, simultaneously, reverse the judgment rendered on the erroneously entertained cause of action.

## ON THE SUIT OF MONTGOMERY ELEVATOR COMPANY

As a defense to Montgomery's action the County raised the pre–existing maintenance contract, asserting that all repairs fell within its boundaries. Montgomery countered that it had fulfilled all requirements of the

maintenance contract by repeatedly warning the county of the impending danger created by the leaking roof; that this action was upon a new and independent contract subsequently entered into by the parties.

With the County's counterclaim dismissed the situation evolves to where only the Montgomery suit for $1,255.25 remains. As a result we need consider only the evidence by which Montgomery claims entitlement plus defenses presented thereto by the County of want or failure of consideration.

The defenses plead to the Montgomery claim are without merit. It was indisputably established on trial that the parties contracted for services and materials with payment to be related to provided consideration. Also established was that some services and materials were in fact subsequently provided by Montgomery, entitling it to recover something or some amount upon application of the contracted "yardstick" measure.

Tarrant County admits to the acceptance of both contracts by signature of its purchasing agent, one of which Montgomery asserts to provide support for its claim for $1,255.25. Despite this the county contends that its "agent" was unable to read the contracts prior to signing; that they were signed under duress due to the need to use the elevator to move prisoners and their meals; that finding another party to repair the generator would have required an excessive period of time due to formal bidding procedures which the county, by state law, is required to conform to prior to "letting" contracts; and, finally, that in any event the work contemplated by both parties fell under the pre–existing maintenance contract.

The documents admittedly signed by Tarrant County's purchasing agent (and allegedly unread) begin with the phrase: "WE PROPOSE". Then follows a list of required labor, parts and cost. At the bottom of the page is a short paragraph, beginning: "It is expressly understood and agreed that all verbal agreements are void and that the acceptance of this proposal shall constitute the contract for the materi-al and work specified above." Above the signature of the county's agent, in each contract, is the following sentence: "This proposal and contract is hereby accepted."

It is somewhat difficult to believe that Tarrant County's purchasing agent would fail to read a contract as short and specific as these prior to signing, particularly where an expenditure exceeding four thousand dollars was involved. Even so, it would not be the county's subjective intent that mattered. In the formation of a contract objective intent is material and controlling; particularly so where in reliance the other party substantially has changed his position and delivered the required performance. "The mental assent of the parties is not requisite for the formation of a contract. . . . If the manifestations of the parties have more than one reasonable meaning, it must be determined which of the possible meanings is to be taken. If either party has reason to know that the other will give the manifestations only one of these meanings and in fact the manifestations are so understood, the party conscious of the ambiguity is bound in accordance with that understanding." Restatement of the Law, Contracts, sec. 71, "Undisclosed Understanding of Offeror or Offeree, When Material", and the Comment at p. 75 (1932).

We consider Tarrant County's assertion and defense of duress, etc., untenable. Inability to attain conformity to normal bidding procedures cannot be permitted to serve as a sanctuary, even for a government agency, in instances where its qualified agent has openly contracted with the private sector. The burden of short–sighted regulations would better fall on the agency, and through it the public, rather than upon a private contractor who has bargained in good faith. (We exclude, of course, instances in which appropriations have been made for a specific purpose, followed by the exhaustion of that amount so as to leave nothing to pay for "extras". That situation is not presented here.)

■ Tarrant County was not inhibited by its first contract with Montgomery (the maintenance contract) from entering into the subsequent contracts. It was free to do so, and did. We reject Tarrant County's argument that the first contract precluded the second. By its acts Tarrant County waived reliance on the maintenance contract, and under equitable principles is estopped.

The contract upon which Montgomery sued dealt with "Routine controller—(to) change bad coils or switches due to water damage". Tarrant County agreed by this contract to pay for necessary labor (at $22.07 per hour)—plus cost of materials. The performance of this "finish up" work required the elevators to be back in service as only from that point could a "telling" observation be made which would reveal damaged switches and coils. This was a proper object for which the parties might contract, and they did so at the same time they contracted for generator replacement and restoration of elevator service—and in the same way, by tender and acceptance of promises to perform.

■ The contention of Tarrant County that the obligation created by the subsequent contract is untenable and unenforceable because of the previous maintenance contract is overruled. The rules of contractual construction dictate that "[a] contract containing a term inconsistent with a term of an earlier contract between the same parties is interpreted as including an agreement to rescind the inconsistent term in the earlier contract." Restatement of the Law, Contracts, sec. 408, "Discharge of Duty Under an Earlier Contract by a Subsequent Inconsistent Contract", and Comment at p. 770 (1932). The presumption is conclusive. *Willeke v. Bailey*, 144 Tex. 157, 189 S.W.2d 477, 479 (1945); *Hall v. Professional Leasing Associates*, 550 S.W.2d 392 (Tex.Civ. App.—Dallas 1977, no writ). We hold the subsequent contract controlling as inconsistent with the maintenance contract.

■ Evidence in the record indicates some character of performance by Montgomery under the contract upon which it declared, so that it was entitled to be paid something. Admittedly there was deficiency in the evidence by which the Montgomery entitlement might have been adequately determined. Contractual provisions can allow for provisions for payment for materials and service, when supplied, to be determined by a "yardstick" measure. By the nature of the trial the Montgomery entitlement is left uncertain as to amount.

To deny Montgomery any compensation would unjustly enrich Tarrant County. However, the record reveals nothing more than the creation of a fact issue on the matter of the extent and degree of Montgomery's entitlement to compensation for reasonable and necessary services and materials. The court failed to make any holding thereon in its findings of fact and conclusions of law. Under these circumstances this court is unable either to settle the question of the entitlement or to conclude the proper amount of damages.

We reverse the judgment awarding relief to Tarrant County and render judgment in dismissal of the suit by cross action of Tarrant County against Montgomery Elevator Company. We reverse the take nothing judgment rendered in the suit of Montgomery Elevator Company against Tarrant County, and remand the cause to the trial court.