Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio



★ ★ ★ ★ ★ ★

# MEMORANDUM OPINION

No. 04-08-00181-CV

Rochelle **COHEN-SAGI** and Annette Goldberg,
Appellants

v.

**PROFINANCE ASSOCIATES, INC**., and Michael B. Jones, Individually,
Appellees

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2005-CI-14159
Honorable Martha Tanner, Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:    Catherine Stone, Chief Justice
Phylis J. Speedlin, Justice
Steven C. Hilbig, Justice

Delivered and Filed:    March 4, 2009

REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART

In this contract dispute, Rochelle Cohen-Sagi and Annette Goldberg appeal the trial court's

judgment in favor of ProFinance Associates, Inc. and Michael B. Jones. We reverse the judgment

of the trial court and render judgment that ProFinance and Jones take nothing against Cohen-Sagi

and Goldberg; we further remand the case to the trial court for calculation of attorney's fees.

BACKGROUND

Sisters Rochelle Cohen-Sagi and Annette Goldberg owned two security companies: MHL, Inc. located in Laredo, Texas and Central de Alarmas Adler, S.A. de C.V. ("Adler") in Monterrey, Mexico. In October of 1997, MHL entered into a non-exclusive sales advisory agreement with ProFinance Associates, Inc. (the "1997 Agreement"). The 1997 Agreement provided that ProFinance would: (1) identify one or more potential buyers for MHL and contact the potential buyers to discuss the availability of MHL for sale; (2) transmit information provided by MHL to the potential buyers; and (3) if requested by MHL, assist in evaluating proposals submitted by interested biders. Additionally, Cohen-Sagi and Goldberg joined the 1997 Agreement, and individually agreed to pay ProFinance a commission if "any other business" owned by Cohen-Sagi and Goldberg was sold to a "Protected Buyer" during the term of the 1997 Agreement or within 24 months after the agreement terminated (hereinafter referred to as the "tail provision"). The term "Protected Buyer" was defined to include: (1) a party identified by ProFinance, or (2) a party as to which MHL requested the assistance of ProFinance. The 1997 Agreement could be terminated by either MHL or ProFinance upon 30 days' written notice. Cohen-Sagi and Goldberg worked with Zeena Hines, vice president of ProFinance, on the sale of MHL. All parties agree that the 1997 Agreement was intended to apply to the sale of MHL, and that Cohen-Sagi and Goldberg would only consider selling both MHL and Adler if the price was "right."

On January 27, 1999, Cohen-Sagi and Goldberg sold MHL to ADT and subsequently paid a commission and related expenses to ProFinance pursuant to the terms of the 1997 Agreement. Thereafter, Cohen-Sagi and Goldberg exchanged correspondence with Hines at ProFinance regarding the sale of Adler. Hines left ProFinance at the end of 2000, and Cohen-Sagi and Goldberg began

corresponding with the company's president, Michael B. Jones. Between 2001 and 2004, correspondence between the parties was sporadic. On February 11, 2004, Jones contacted Cohen-Sagi via email and explained that an American security company, Diebold, was interested in buying alarm companies in Mexico. Jones represented that he had made contact with David Hague at Diebold. That same day, Cohen-Sagi forwarded an updated fact sheet regarding Adler to Jones to share with Diebold. On March 5, 2004, Cohen-Sagi contacted Jones for an update and advised Jones she had been talking to another broker; however, she affirmed that ProFinance would be entitled to a commission "as agreed three years ago" if an agreement were to come to fruition with Diebold.

In April, after losing patience with ProFinance's inactivity and lack of progress in selling Adler, Cohen-Sagi and Goldberg executed an agreement with the law firm of Buchanan Ingersoll for assistance in the sale of Adler. Shortly thereafter, Buchanan Ingersoll's consultant, Peter Raymond, found six to seven potential purchasers for Adler, one of which was Diebold. On August 23, 2004, Cohen-Sagi emailed Jones, stating that she had "contracted with another broker" and thanked him for his efforts. Jones responded that their agreement was now cancelled and reminded Cohen-Sagi that, under the tail provision of the 1997 Agreement, his fee would be protected if Adler were sold to a Protected Buyer during the next 24 months. In the spring of 2005, Diebold purchased Adler after Raymond negotiated the sale; all the paperwork regarding the sale was drafted by Buchanan Ingersoll and Diebold. Subsequently, Jones contacted Hague at Diebold regarding a commission for the sale of Adler; Hague denied knowledge of any preexisting relationship between Adler and ProFinance.

Thereafter, ProFinance made a demand upon Cohen-Sagi and Goldberg for payment of a commission in relation to the sale of Adler. In response, Cohen-Sagi and Goldberg brought a declaratory judgment action against ProFinance, seeking a declaration that the 1997 Agreement contained a "procuring cause" condition and that because ProFinance was not the procuring cause of the sale of Adler to Diebold, they were not obligated to pay a commission to ProFinance. Profinance countersued for its commission under breach of contract and promissory estoppel theories of recovery. The trial court realigned the parties before trial, making ProFinance the plaintiff and Cohen-Sagi and Goldberg the defendants.

At trial, Cohen-Sagi, Jones, Raymond, and Hines testified. Cohen-Sagi testified that in 2001 she entered into an oral agreement with Jones providing that ProFinance would receive a commission if it "sold" Adler. Cohen-Sagi was tired of living in Mexico and very much wanted the company sold. Unlike the 1997 Agreement, which provided that ProFinance would receive a commission merely for identifying a Protected Buyer, the oral agreement required ProFinance to effectuate the sale of Adler. She stated that she did not put the agreement in writing because "[w]e were very Mexican in our relationship. We shook hands over the phone." Jones denied that such an oral agreement existed.

At the conclusion of trial, the jury made the following relevant findings: (1) the parties intended for the 1997 Agreement to apply to the sale of Adler (Question 1); (2) Cohen-Sagi and Goldberg failed to comply with the 1997 Agreement (Question 2); (3) ProFinance complied with the 1997 Agreement with regard to the sale of Adler (Question 3); (4) no causal connection[1] existed

---

[1] The jury was instructed that a "causal connection" required "more than a mere solicitation or introduction." For a causal connection to exist, ProFinance's actions "must have created some minimal interest in the purchaser which resulted in the ultimate sale."

between the actions of ProFinance and the sale of Adler to Diebold (Question 8); and (5) Cohen-Sagi, Goldberg, and ProFinance entered into an oral agreement in 2001 in which Cohen-Sagi and Goldberg agreed to pay a commission to ProFinance if ProFinance sold Adler (Question 9). Both parties moved for judgment notwithstanding the verdict, and the trial court entered judgment for ProFinance, thus disregarding Questions 8 and 9 as immaterial. ProFinance was awarded damages, court costs, and attorney's fees. Cohen-Sagi and Goldberg timely appealed.

## DISCUSSION

In their first issue, Cohen-Sagi and Goldberg contend the trial court erred in disregarding the jury's answers to Questions 8 and 9 and in failing to rule as a matter of law that the 2001 oral agreement superseded the 1997 Agreement. A trial court may disregard a jury finding only if it is unsupported by evidence or if the issue is immaterial. *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994); *Crescendo Investments, Inc. v. Brice*, 61 S.W.3d 465, 477 (Tex. App.—San Antonio 2001, pet. denied). A question is immaterial when it should not have been submitted, or when it was properly submitted but has been rendered immaterial by other findings. *Spencer*, 876 S.W.2d at 157; *Crescendo Investments*, 61 S.W.3d at 477. A question which calls for a finding beyond the province of the jury, such as a question of law, may be deemed immaterial. *Spencer*, 876 S.W.2d at 157.

When a jury makes a finding that two contracts exist and it is evident that the terms of both contracts are inconsistent with each other, then the two contracts cannot subsist together. *Willeke v. Bailey*, 144 Tex. 157, 189 S.W.2d 477, 479 (1945); *Ed Hoffman Motors v. G.F.C. Corp.*, 304 S.W.2d 216, 217 (Tex. Civ. App.—San Antonio 1957, writ ref'd n.r.e.). "In that situation the rule is that the [contract] made first is conclusively presumed to have been superseded by the other."

*Willeke*, 189 S.W.2d at 479; *see also Ed Hoffman Motors*, 304 S.W.2d at 217-18. Accordingly, when two contracts between the same parties are inconsistent, we conclusively presume the later contract supersedes the earlier contract. *Willeke*, 189 S.W.2d at 479; *IP Petroleum Co. v. Wevanco Energy, L.L.C.*, 116 S.W.3d 888, 899 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

If the determination of whether a later agreement supersedes a former agreement must be made by determining whether the language of the two contracts is inconsistent, the issue is a question of law. *Western Tractor Corp. v. Continental-Eagle Corp.*, 24 F.3d 240 (5th Cir. 1994). In the absence of such inconsistent provisions which work an implied novation, a second contract will operate as a novation of the first contract only when the parties to both contracts intend and agree that the obligations of the second shall be substituted for and operate as a discharge of the obligations of the first. *Chastain v. Cooper & Reed*, 152 Tex. 322, 257 S.W.2d 422, 424 (1953); *CTTI Priesmeyer, Inc. v. K & O Ltd. P'ship*, 164 S.W.3d 675, 681 (Tex. App.—Austin 2005, no pet.). It is not necessary that a novation be in writing or that it be evidenced by express words; like any other ultimate fact it may be proved as an inference from the acts and conduct of the parties and other facts and circumstances. *Chastain*, 257 S.W.2d at 424. Whether a novation is intended, in the absence of an express agreement to that effect, is usually a question of fact and can only become a question of law when the state of the evidence is such that reasonable minds cannot differ as to its effect. *Id.*; *CTTI Priesmeyer,* 164 S.W.3d at 681.

In this case, Cohen-Sagi and Goldberg proffered testimony that the 1997 Agreement pertained only to the sale of MHL. When ProFinance found a buyer for MHL in 1999, Cohen-Sagi and Goldberg paid the promised commission to ProFinance. Thereafter, the parties entered into an oral agreement in 2001 regarding the sale of Adler. Cohen-Sagi stated that in 2001, she and Jones

verbally agreed that if ProFinance sold Adler it would receive a commission at "the same rate as in our prior agreement." Therefore, unlike the 1997 Agreement, which only required ProFinance to identify Potential Buyers and transmit information in order to receive its commission, the 2001 oral agreement required ProFinance to actually sell Adler in order to be entitled to a commission. "[The 2001 oral agreement] was never intended as an agreement to pay [ProFinance] for a sale that did not result from [Jones's] efforts," according to Cohen-Sagi. Cohen-Sagi also added that the oral agreement was not intended to imply the parties were operating under the 1997 Agreement, and that she believed the 1997 Agreement terminated once MHL was sold to ADT in 1999.

On the other hand, ProFinance proffered testimony that there was a meeting of the minds between ProFinance and Cohen-Sagi and Goldberg to sell Adler pursuant to the 1997 Agreement. ProFinance relied on correspondence between the parties pursuant to which ProFinance faxed a copy of the 1997 Agreement to Cohen-Sagi and Goldberg allegedly outlining the extended terms of their agreement regarding Adler. During trial, ProFinance explained "actual contact with somebody" and "discussions about the potential seller" that are "fairly minimal" was all that was required to receive their commission. Jones testified he fulfilled his obligations by identifying and transmitting information to Diebold about Adler, and therefore ProFinance is entitled to a commission for the sale because the transaction took place within the 24-month period following the termination of their services.

While ProFinance denies the existence of a 2001 oral agreement, the jury considered the conflicting evidence and found a 2001 oral agreement existed. The jury further found that the terms of the 2001 agreement required Cohen-Sagi and Goldberg to pay ProFinance a commission only if ProFinance's actions created some minimal interest by the purchaser which resulted in the ultimate

sale of Adler and amounted to more than a mere solicitation or introduction. Because the 2001 oral agreement was later in time and its terms are inconsistent with the terms of the 1997 Agreement, the 2001 oral agreement is conclusively presumed to supersede and discharge the 1997 Agreement in regard to the sale of Adler.[2] *Willeke*, 189 S.W.2d at 479; *see also Ed Hoffman Motors*, 304 S.W.2d at 217-18. Once the jury found that an oral agreement existed, the jury's findings with respect to Questions 1, 2, and 3 became immaterial because the 1997 and 2001 agreements could not simultaneously exist. Accordingly, Cohen-Sagi and Goldberg's first issue is sustained.

ProFinance requests that if we hold that it cannot recover under the 1997 Agreement, we affirm the trial court's judgment on the alternative jury findings of promissory estoppel.[3] ProFinance argues that the evidence supports the jury's findings that ProFinance relied to its detriment on Cohen-Sagi and Goldberg's promise to pay ProFinance if Adler was sold to a buyer identified by ProFinance, and that ProFinance suffered injury as a result of its detrimental reliance. Cohen-Sagi and Goldberg respond that ProFinance cannot recover under promissory estoppel because the promise on which it seeks to recover was covered by an express contract, *i.e.*, the 2001 oral agreement. We agree. Because the jury found that the parties entered into an oral agreement, ProFinance cannot recover under promissory estoppel. *See Subaru of Am., Inc. v. David McDavid*

---

[2] We also agree with Cohen-Sagi and Goldberg's alternative argument, which is that the 1997 Agreement expired by its own terms once ADT bought MHL in 1999; at that time, there was nothing left for the parties to perform and the contract was thus fully executed. In fact, on January 17, 2000, Zeena Hines faxed a copy of the 1997 Agreement to Moses Goldberg, Annette's husband, and on the fax cover sheet referred to the 1997 Agreement as "fully executed."

[3] Question 4 asked the jury whether ProFinance substantially relied to its detriment on Cohen-Sagi and Goldberg's promises, if any, and whether this reliance was foreseeable by Cohen-Sagi and Goldberg; the jury answered in the affirmative. Question 11 asked the jury what sum of money would compensate ProFinance for its damages that resulted from its reliance on Cohen-Sagi and Goldberg's promise; the jury answered $36,000. The trial court did not enter judgment on this finding, but did on Question 10, in which the jury found $36,000 would compensate ProFinance for Cohen-Sagi and Goldberg's failure to comply with their agreement with ProFinance.

*Nissan, Inc.,* 84 S.W.3d 212, 226 (Tex. 2002) (citing *Wheeler v. White*, 398 S.W.2d 93, 96-97 (Tex. 1965)).

## CONCLUSION

Because the jury found the parties entered into an oral agreement in 2001 and because its terms are inconsistent with the terms of the 1997 Agreement, the 2001 agreement superseded the 1997 Agreement. As a result, the jury's findings with regard to the 1997 agreement are rendered immaterial and must be disregarded. *Spencer*, 876 S.W.2d at 157; *Crescendo Investments*, 61 S.W.3d at 477. Accordingly, we reverse the judgment of the trial court, and render judgment that ProFinance and Jones take nothing against Cohen-Sagi and Goldberg. We remand the case to the trial court for a determination on attorney's fees pursuant to the Declaratory Judgments Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon 2008).

Phylis J. Speedlin, Justice