NO. 07-11-00141-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

APRIL 13, 2012

---

TEXLAND PETROLEUM, L.P.
AND JAMES J. REEVES, TRUSTEE, APPELLANTS

v.

SCYTHIAN, LTD., CK GAS & OIL INVESTMENTS, LTD.,
BKDK, LP, KURT CHAPMAN, ROCKER A OPERATING
COMPANY AND CONOCOPHILLIPS COMPANY,
APPELLEES

---

FROM THE 286TH DISTRICT COURT OF HOCKLEY COUNTY;

NO. 09-04-21678; HONORABLE PAT PHELAN, JUDGE

---

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellants, Texland Petroleum, L.P., and James J. Reeves (collectively, "Texland"), appeal the trial court's summary judgment in favor of appellees, Scythian, Ltd., CK Gas & Oil Investments, Ltd., BKDK, L.P., Kurt Chapman, Rocker A Operating Company, and ConocoPhillips Company (collectively, "the Scythian Group"). We will reverse the judgment and remand to the trial court for further proceedings.

Background

The Scythian Group acquired its interest in the subject property[1] through the assigns of Tamarack Petroleum Company. Whatever interest Texland acquired in the subject property was acquired from the assigns of Craig, Ltd. The core issue involved in this appeal relates to whether and to what extent Texland acquired interest in the subject property.

After acquiring Craig's interest in the subject property, Texland sued the Scythian Group to establish its ownership of 25 percent of the leasehold interest in the subject property, and to recover its proportionate share of production from two producing wells. To establish its rights, Texland moved for partial summary judgment on the basis of certified copies of all of the instruments in its chain of title.

The Scythian Group moved for summary judgment on the basis that an unrecorded May 7, 1984 Letter Agreement between Texland's predecessor in interest, Craig, and the Scythian Group's predecessor in interest, Tamarack, established that any interest holder that went nonconsent on the initial drilling of a well would forfeit its interest to the entire area of interest, including the subject property. It is undisputed that Craig did not consent to the initial drilling of the Arnwine 12A #1 well. Consequently, the Scythian Group contended, by its motion for summary judgment, that Craig had forfeited its interest in the subject property, and, as assignee of Craig's interest, Texland had no ownership interest in the subject property. Texland responded by citing to the Joint

---

[1] The subject property in dispute in this appeal is the leasehold interests in the North Half of Labor 12, League 26, Lamar County School Land, Hockley County, Texas from the surface to a depth of 7,000 feet subsurface.

Operating Agreement (JOA) which omitted the Letter Agreement's forfeiture provision and, instead, made going nonconsent on the initial drilling of a well subject to a 400 percent penalty.

The trial court denied Texland's motion for partial summary judgment and, about a month later, granted the Scythian Group's motion for summary judgment. It is from this Summary Judgment that Texland appeals. By its first issue, Texland contends that, assuming the Letter Agreement constitutes a contract, it was superseded by the subsequent, inconsistent JOA. Texland also argues, in the alternative, that, if the forfeiture provision of the Letter Agreement survived the JOA, Texland's predecessor in interest retained its ownership interest in the subject property because it had previously acquired that interest prior to going nonconsent on the initial drilling of the Arnwine 12A #1 well.

## Summary Judgment

By their first issue, Texland contends that the trial court erred in granting the Scythian Group's summary judgment on the basis of the forfeiture provision of the Letter Agreement. Texland's contention is that the JOA's 400 percent penalty provision superseded the inconsistent forfeiture provision of the Letter Agreement and, therefore, Texland retains its interest in the subject property once the 400 percent penalty has been recovered. In response, the Scythian Group contends that the trial court correctly construed the two agreements, and that Texland's predecessors in interest forfeited their rights in the subject property.

3

Standard of Review

In reviewing a summary judgment, the reviewing court must apply the following, well-established standards: (1) the movant for summary judgment has the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and (3) every reasonable inference must be indulged in favor of the non-movant, and any doubts resolved in its favor. Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985).

To prevail on a motion for summary judgment, the movant must conclusively establish the absence of any genuine issue of material fact and that he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). Once the movant has established a right to summary judgment, the nonmovant has the burden to respond to the motion, and present to the trial court any issues that would preclude summary judgment. Barbouti v. Hearst Corp., 927 S.W.2d 37, 64 (Tex.App.--Houston [1st Dist.] 1996, writ denied); see City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979). When both parties move for summary judgment, the reviewing court should determine all questions presented and render the judgment the trial court should have rendered. Dow Chem. Co. v. Bright, 89 S.W.3d 602, 605 (Tex. 2002).

Superseded or Merged Letter Agreement

Within the law of contracts, merger is the extinguishment of one document by its absorption into another document, which is largely a matter of intention of the parties.

4

S. Plains Lamesa R.R., Ltd. v. Kitten Family Living Trust, No. 07-06-0209-CV, 2008 Tex.App. LEXIS 603, at *6 (Tex.App.—Amarillo Jan. 28, 2008, pet. denied) (mem. op.); Satre v. Dommert, 184 S.W.3d 893, 899 (Tex.App.—Beaumont 2006, no pet.); Hill v. Spencer & Son, Inc., 973 S.W.2d 772, 775 (Tex.App.--Texarkana 1998, no pet.). "As a general principle, when two contracts are entered into by the same parties, covering the same subject matter, but containing terms which are so inconsistent that the terms of the two contracts cannot subsist together, the legal effect of the subsequent contract is to rescind the earlier contract." S. Plains Lamesa R.R., Ltd., 2008 Tex.App. LEXIS 603, at *6 (citing Willeke v. Baylor, 144 Tex. 157, 189 S.W.2d 477, 479 (1945)). However,a prior agreement is not superseded by or merged into a subsequent agreement relating to the same subject matter if the first agreement could constitute a separate agreement or where the first agreement is not fully integrated into the second agreement but merely modifies the first agreement in some respect. Id. at *6-7 (citing Hubacek v. Ennis State Bank, 159 Tex. 166, 317 S.W.2d 30, 32 (1958)). Stated another way, when the parties manifest an intent to have any of the original contract's provisions survive, merger is inapplicable. Id. at *7. Thus, application of the doctrine of merger completely discharges the earlier, inconsistent contract. See id.

In the present case, the JOA did not contain a merger clause nor include any reference to the Letter Agreement. However, the Letter Agreement specifically referenced terms that were to be included in the JOA, and the parties to those agreements expressed their intent in the assignment of interest from Craig to Tamarack that both the Letter Agreement and JOA would govern their operations on the subject

5

property. As such, we conclude that the doctrine of merger is inapplicable because the parties did not manifest an intent to have the JOA supersede the Letter Agreement.

Harmonizing the Letter Agreement and JOA

However, even though the parties did not intend for the JOA to supersede the Letter Agreement, inconsistencies between the provisions of the two agreements, if not capable of being harmonized as a matter of law, would preclude summary judgment. "Multiple contracts pertaining to the same transaction, executed by the same parties, at the same time or contemporaneously with one another, may be construed as if they were part of a single unified instrument, even if the contracts do not expressly refer to each other." Id. at *7-8 (citing Fort Worth Indep. Sch. Dist. v. City of Fort Worth, 22 S.W.3d 831, 840 (Tex. 2000)). To determine whether multiple contracts are ambiguous when construed together, the reviewing court must consider the entire agreements in an attempt to harmonize and give effect to all the provisions of the contracts in a manner that will not render any of the provisions meaningless. J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003); S. Plains Lamesa R.R., Ltd., 2008 Tex.App. LEXIS 603, at *8. If the contracts can be harmonized in a manner in which they have a definite and certain legal meaning, the contracts are unambiguous. See J.M. Davidson, Inc., 128 S.W.3d at 229. On the other hand, if the contracts are subject to two or more reasonable interpretations, they are ambiguous, and give rise to a fact issue regarding the intent of the parties. See id.

The Letter Agreement provides that the 400 percent nonconsent penalty will apply "only to the completing, reworking or plugging back of any well." It goes on to

6

state that the nonconsent penalty "shall not apply to the drilling of any well" because any party that declines to participate in the initial drilling of a well "shall forfeit all rights not only in the proposed well, but also in the entire prospect remaining unearned . . . ."

However, the JOA provides that the 400 percent penalty is applied to drilling, reworking/deepening, recompleting, plugging back, testing, and completing of any wells. It is significant to note that "recompleting" was typed into the Model Form Operating Agreement that provided the basis for the parties' JOA. The JOA does not contain any sort of forfeiture provision.

Consequently, if the Letter Agreement is given effect, the 400 percent penalty would not apply to the recompleting or testing of a well because the Letter Agreement specifically provides that the 400 percent penalty will apply "only to the completing, reworking or plugging back of any well." Thus, giving effect to the Letter Agreement would render the terms "recompleting" and "testing" in the JOA meaningless.

However, because the parties to the JOA used a form operating agreement, the Scythian Group contends that the Letter Agreement was intended by the parties to render additional activities made subject to the 400 percent penalty by the form agreement meaningless. And, the Scythian Group's contention is well taken as it applies to the Letter Agreement's intent to remove "testing" from being subject to the 400 percent penalty. However, the modification of the form operating agreement to include "recompleting" as an activity subject to the 400 percent penalty evinces that it was the intent of the parties to that agreement to alter the effect of the Letter Agreement. See Sims v. Century 21 Capital Team, Inc., No. 03-05-00461-CV, 2006

7

Tex.App. LEXIS 7990, at \*8-9 (Tex.App.—Austin Sept. 7, 2006, no pet.) (mem. op.) (inclusion of typed in terms in a form agreement "are by their nature negotiable, and not boilerplate contractual terms.")  As a result, it appears that it was the parties' intent that the JOA make the 400 percent penalty provision applicable to recompleting even though the Letter Agreement would exclude recompleting from the scope of the penalty.

The typed-in addition of "recompleting" within the 400 percent penalty provision of the form JOA gives rise to an inference that the parties renegotiated the terms of the joint venture that they were entering into.  See id.  However, while the parties expressed their intent that both the Letter Agreement and JOA would govern their operations on the subject property, the inconsistency of making the 400 percent penalty applicable to recompleting raises a genuine issue of material fact regarding the parties' intended effect when a party refused to consent to the initial drilling of a well.  The existence of a fact question precludes the granting of summary judgment.  See S. Plains Lamesa R.R., Ltd., 2008 Tex.App. LEXIS 603, at \*9-10.  As such, we sustain that portion of Texland's first issue that requests that we reverse the trial court's entry of summary judgment. However, because the existence of a genuine issue of material fact precludes summary judgment, see Am. Tobacco Co., 951 S.W.2d at 425; Nixon, 690 S.W.2d at 548-49, we deny Texland's request that we render summary judgment in favor of Texland.

### Area of Mutual Interest

Because Texland's second issue is presented in the alternative and is conditioned upon this Court determining that the forfeiture provision of the Letter Agreement survived the subsequent JOA, we need not address this issue.  See Tex. R.

8

APP. P. 47.1. However, for clarity, we will reiterate that we have concluded only that a genuine issue of material fact has been raised regarding whether the forfeiture provision of the Letter Agreement survived the subsequent entry of the JOA, which contains at least one inconsistent provision.

## Conclusion

Having found a genuine issue of material fact in attempting to harmonize the Letter Agreement and JOA covering the subject property, we reverse the summary judgment entered by the trial court, and remand the case for further proceedings consistent with this opinion.


Mackey K. Hancock
Justice

9